Solomon LUSBY, Vaughn Lusby and Alvin Jerard Lusby, Plaintiffs-Appellees,

v.

T.G. & Y. STORES, INC., an Oklahoma corporation; City of Lawton, Oklahoma, a municipal corporation; Charles Gent; Steve Wertz; and Kent Dunegan, Defendants-Appellants.

Nos. 82–1721, 82–1779.

United States Court of Appeals, Tenth Circuit.

Nov. 23, 1984.

1424

Russell D. Bennett, City Atty., Lawton, Okl. (Gerald S. Rakes, Asst. City Atty., Lawton, Okl., with him on the briefs), for defendants-appellants City of Lawton, Steve Wertz, and Kent Dunegan.

Michael W. Hinkle, Oklahoma City, Okl. (Page Dobson and Ronald R. Hudson, Oklahoma City, Okl., with him on the briefs), Holloway, Dobson, Hudson & Bachman, Oklahoma City, Okl., for defendants-appellants T.G. & Y. Stores, Inc. and Charles Gent.

Gretchen A. Harris, Oklahoma City, Okl. (Jack L. Kinzie, also of Andrews, Davis,

Legg, Bixler, Milsten & Murrah, Oklahoma City, Okl., and Linda G. Scoggins of Spradling, Alpern, Friot & Gum, Oklahoma City, Okl., with her on the briefs), for plaintiffs-appellees.

Before LOGAN and McWILLIAMS, Circuit Judges, and CAMPOS, District Judge.*

LOGAN, Circuit Judge.

These appeals arise out of judgments in favor of plaintiffs Solomon Lusby, Vaughn Lusby, and Alvin Lusby—three brothers—who asserted civil rights and pendent state tort claims against the City of Lawton, Oklahoma, two of its police officers, Kent Dunegan and Steve Wertz, T.G. & Y. Stores, Inc., and Charles Gent, another Lawton police officer who was serving while off-duty as a security guard at a T.G. & Y. store in Lawton at the time of the disputed incidents. The jury returned a verdict for all plaintiffs on their 42 U.S.C. § 1983 claims against each of the defendants. On the pendent claims there were differences in the verdicts: on false arrest Solomon and Alvin won against all defendants although Vaughn won only against Gent and T.G. & Y.; on malicious prosecution Solomon and Alvin received a verdict only against Wertz, Dunegan, and the city, and Vaughn succeeded only against Gent and T.G. & Y.; on assault and battery only Alvin prevailed and only against Wertz. The verdict form did not require the jury to separate damages on the particular claims, except among the categories actual, nominal, and punitive. The judgments against each defendant were as follows (all actual damages except as indicated):

| | Solomon | Vaughn | Alvin |
|---|---|---|---|
| Gent | $1,000 | $3,000 | $2,000 |
| T.G.&Y. | 4,000 | 16,000 & 50,000 punitive | 4,000 |
| Wertz | 2,000 | 1,000 | 2,000 |
| Dunegan | 2,000 | 1,000 | 1,000 |
| City of Lawton | 6,000 | 4,000 | 10,000 |

The jury found for the plaintiffs on defendant Gent's counterclaim for assault and battery. The trial court entered judgment on the verdicts and awarded attorney's fees to plaintiffs pursuant to 42 U.S.C. § 1988.

The city and police officers Wertz and Dunegan appeal, contending that the trial court erred (1) in failing to grant a directed verdict in favor of the city and the officers on the § 1983 claims; and (2) in refusing to dismiss the pendent claims because plaintiffs did not comply with the Oklahoma Political Subdivision Tort Claims Act, Okla. Stat.Ann. tit. 51, §§ 151–170. Gent and T.G. & Y. appeal separately, arguing that the trial court erred (1) in refusing to instruct the jury on the qualified immunity Gent asserted as a defense to the § 1983 claims; (2) in permitting the jury to find that T.G. & Y. and Gent acted under color of state law for purposes of § 1983; (3) in permitting the jury to assess punitive damages against T.G. & Y.; (4) in allowing plaintiffs to introduce evidence of Gent's character from his police personnel file; and (5) in instructing the jury regarding damages for future medical expenses and loss of earning capacity. Additionally, all defendants contend that the trial court erred in awarding attorney's fees in excess of the amount provided under plaintiffs' contingent fee agreement with their attorneys.

I

This dispute arose when plaintiffs stopped at a T.G. & Y. store in Lawton, Oklahoma, on July 6, 1979. Vaughn Lusby and Alvin Lusby entered the store and Vaughn selected a pair of sunglasses. Substantial evidence supports the jury's implicit finding that Vaughn went through the checkout line and paid for the sunglasses, and then decided to return to buy some hairspray. Carrying the sunglasses, Vaughn entered the checkout line again and paid for the hairspray. David Jamison, an assistant manager at the store, saw Vaughn pass through the checkout line the second time, carrying the sunglasses, but not paying for them. Jamison summoned

* Honorable Santiago E. Campos, United States District Judge for the District of New Mexico, sitting by designation.

Charles Gent, an off-duty Lawton police officer employed by T.G. & Y. as a plain clothes security guard, to investigate.

Gent stopped Vaughn outside the store and asked him for the receipt for the sunglasses. Vaughn explained that he had paid for the glasses but had lost the receipt. Gent showed Vaughn his badge and told him that he was a Lawton police officer acting as a security guard and that Vaughn was under arrest for shoplifting. Gent and Vaughn went back inside the store to pursue the matter.

Two altercations then occurred, the precise details of which the parties dispute. Upon reentering the store Gent immediately sought to escort Vaughn to a back room. On the way to the rear of the store Vaughn stopped and raised his voice, apparently in an attempt to get the cashier's attention. Gent grabbed Vaughn around the throat using a chokehold. Vaughn struggled to loosen Gent's grip; then Gent and other T.G. & Y. employees pinned Vaughn. Solomon and Alvin, having entered the store to see what was wrong, saw the T.G. & Y. employees wrestling with their brother and came to his aid. Another struggle ensued. During this struggle Solomon struck Gent and knocked his glasses off, and Alvin shoved Gent. At some point, Gent struck at least one of the plaintiffs with a pistol. Eventually that struggle ended, and plaintiffs and Gent went to a back office in the store.

In a few minutes Lawton police officers Wertz and Dunegan arrived at the store and took plaintiffs into custody. When they arrived at the police station, another altercation occurred. Again, the parties dispute the precise events. Plaintiffs testified that Wertz hit Alvin in the face and pushed his head into a brick wall. Once inside the jail, plaintiffs were subjected to strip searches, allegedly because Wertz and Dunegan found marijuana paraphernalia in Solomon's possession. Plaintiffs were charged with various offenses: petty larceny (Vaughn), assault and battery (Alvin, Solomon, and Vaughn), assault on a police officer (Alvin), damaging private property (Alvin), resisting arrest (Vaughn and Solomon), disobeying a lawful order (Alvin),

and possession of marijuana (Solomon). Seven months later the city dropped all charges and plaintiffs filed this suit.

Meanwhile the T.G. & Y. managers checked with the cashier from whom Vaughn bought the hairspray. Although there is a conflict, the evidence overwhelmingly suggests that the cashier believed Vaughn had paid her for the sunglasses and reported this to the T.G. & Y. managers shortly after the incident.

## II

■ The jury found all defendants liable for a violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983. The provisions of § 1983 only apply to persons who both deprive others of a right secured by the Constitution or laws of the United States and act under color of a state statute, ordinance, regulation, custom, or usage. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). Defendants contend on appeal that one or both of these elements is missing with respect to the Lusbys' claims. The § 1983 liability of the various defendants rests on separate theories, so we consider each separately.

## A

Charles Gent contends that he was not acting under color of state law while employed at the T.G. & Y. store. Alternatively, he contends that if he was so acting he is not liable because he is entitled to a qualified immunity generally accorded to law enforcement officials.

At the time Gent allegedly committed the civil rights violations, he was an off-duty Lawton police officer employed as a part-time security guard at T.G. & Y.'s store in Lawton. Gent was not wearing a police uniform, although he apparently had his police badge with him as well as a Derringer pistol—not a police issue weapon—borrowed from a fellow officer.

We must consider the circumstances under which an off-duty police officer working as a security guard acts under color of

state law for purposes of a civil rights claim.[1] In *Griffin v. Maryland*, 378 U.S. 130, 84 S.Ct. 1770, 12 L.Ed.2d 754 (1964), the Supreme Court found state action when an amusement park security guard who had been deputized as a sheriff of the county, wore a badge, and identified himself as a deputy sheriff, arrested black park patrons who refused to leave the park in response to his order. The Supreme Court there declared, "If an individual is possessed of state authority and purports to act under that authority, his action is state action. It is irrelevant that he might have taken the same action had he acted in a purely private capacity or that the particular action which he took was not authorized by state law." *Id.* at 135, 84 S.Ct. at 1773.

The Supreme Court may now apply a somewhat more restrictive test. In discussing the interrelationship of the "state action" requirement of the Fourteenth Amendment and the "color of state law" requirement of 42 U.S.C. § 1983 in another context, the Court described a two-part test for determining whether conduct allegedly depriving a plaintiff of a federal right is fairly attributable to the state: (1) "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and (2) the depriving party must be "a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982). The Supreme Court proceeded to describe how the concepts of state action and color of state law collapse into each other when the depriving party is one "whose official character is such as to lend the weight of the State to his decision," but are different when the constitutional claim is against a private party. *Id.* If private persons are charged they must be jointly engaged with state officials in prohibited action to become state actors under color of law. *Id.* at 941, 102 S.Ct. at 2756. *See also Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982) ("[A] State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.")

■ There is evidence in the record that both before and after the Lusbys' arrest, defendant Gent was acting as an on-duty police officer. When Gent accosted Vaughn Lusby, Gent flashed his badge and identified himself as a Lawton police officer working as a security guard for T.G. & Y. According to Vaughn, Gent told Vaughn moments after he stopped him that he was going to jail. Gent denied this, but conceded that he placed Vaughn under arrest on the spot, before Gent had had any opportunity to question Vaughn or other witnesses or ascertain what had happened.[2]

1. In the only case in this circuit involving an off-duty policeman, *Draeger v. Grand Central, Inc.*, 504 F.2d 142 (10th Cir.1974), the court assumed, and the parties apparently did not contest, that an off-duty policeman working as a security guard in a department store was acting under color of state law.

2. Gent's confusion of his private and public roles is evident from his testimony about what information he needed as a private citizen to arrest Vaughn for suspected shoplifting. Vaughn was ultimately charged with violating Lawton Code § 15–104, "Larceny; embezzlement," a misdemeanor offense covering thefts of less than $20. Gent thought he could make a citizen's arrest for a misdemeanor offense not committed in his presence if he had spoken to a reliable witness. Yet actually, Gent's immediate arrest of Vaughn was legal only if Gent was acting as a police officer at the time, and then only if the offense was committed in his presence.

Under Oklahoma law a peace officer may not make a lawful arrest without a warrant for a misdemeanor offense, unless the offense was committed or attempted in his presence. *Catron v. City of Ponca City*, 340 P.2d 504, 507 (Okla.Crim.App.1959); *see also* Okla.Stat.Ann. tit. 22, §§ 196, 202; *cf. Utzman v. State*, 568 P.2d 641, 642 (Okla.Crim.App.1977) (describing shoplifting *in presence* of a peace officer). Presumably an ordinary citizen may not conduct such an arrest either. Oklahoma has modified the law slightly for shoplifting situations so that a peace officer may arrest any person if he has "probable cause for believing [the person] has committed larceny of merchandise held for sale in retail or wholesale establishments, when such arrest is made in a reasonable manner." Okla. Stat.Ann. tit. 22, § 1342. But this statutory exception only applies to peace officers. *Cf.* Okla.

After the arrest Gent went to the police station to finish his paperwork on the Lusby incident. He used police documents to get information to complete the citizen's arrest forms. In addition there was evidence suggesting that Gent wanted to file charges against Alvin for assault on a police officer even though Gent was not acting as a police officer at the time he got into an altercation with Alvin and Solomon in the T.G. & Y. store.[3] *Griffin* and many other cases would appear to treat this as sufficient without more.[4]

If we view Gent as a private person who could be held liable only under the *Lugar* test, there is sufficient evidence of cooperation with the Lawton police department to conclude that he acted under color of state law. The testimony was that Officers Wertz and Dunegan picked up the Lusbys, handcuffed and frisked them and took them to jail without interviewing witnesses or conducting any inquiry to determine whether probable cause existed to arrest them. They relied entirely on Gent's word and before he completed a citizen's arrest form. The officers made no independent investigation of the shoplifting, which would have shown that Vaughn Lusby had paid for the glasses. The Lawton police chief testified that the police department routinely did not independently investigate a merchant's allegations of misdemeanor shoplifting before taking into custody suspects the merchant's employees detained through citizen's arrest. In fact, the police department provided T.G. & Y. with special forms prepared for merchants who detained suspected shoplifters which apparently allowed officers the discretion to issue a summons to a suspect when they arrived at the store, without taking the person to jail. Thus, if we treat Gent as a private party, the local police followed a policy that allowed him to substitute his judgment for that of the police. Such cooperative activity between the police department and a private party is sufficient to make Gent a party acting under color of state law.[5]

Stat.Ann. tit. 22, § 1343 (authorizing mere detention for a reasonable time by a merchant, his agent or employee). An off-duty police officer serving as a private security guard must comply with the requirements of a citizen's arrest. *Stewart v. State,* 527 P.2d 22, 24 (Okla.Crim. App.1974).

Gent admits that it was difficult for him to distinguish between his police officer duties and his citizen duties. This distinction may have been especially difficult because T.G. & Y. did not make any effort to train Gent about such subtleties prior to allowing him to work as a security officer.

3. Gent originally signed the complaint against Alvin for assault on a police officer but his signature was later crossed out by Officer Wertz. The stated reason for insisting on handcuffing Alvin behind the back before leaving the T.G. & Y. was that his shoulder injury had not prevented him from hitting a police officer while at the store. Wertz testified in his deposition that he suggested to Gent that he change the assault on a police officer charge to simply assault because Gent was off-duty.

4. *See Traver v. Meshriy,* 627 F.2d 934, 938 (9th Cir.1980) (action under color of state law when bank guard responded to problem as police officer by identifying himself as such and showing his police identification); *Davis v. Murphy,* 559 F.2d 1098, 1101 (7th Cir.1977) (action under color of state law when Milwaukee statute provided that police officers were always subject to duty; officers in question identified themselves as police and showed their badges and guns during a brawl they started); *Stengel v. Belcher,* 522 F.2d 438, 441 (6th Cir.1975), *cert. dismissed,* 429 U.S. 118, 97 S.Ct. 514, 50 L.Ed.2d 269 (1976) (action under color of state law when regulation required off-duty police officer to take action "in any type of police or criminal activity" 24 hours a day); *Robinson v. Davis,* 447 F.2d 753, 758–59 (4th Cir.1971) (no action under color of state law when plaintiffs knew that college security officials in police uniform were acting as private security guards), *cert. denied,* 405 U.S. 979, 92 S.Ct. 1204, 31 L.Ed.2d 254 (1972); *Watkins v. Oaklawn Jockey Club,* 183 F.2d 440, 443 (8th Cir.1950) (no state action when officer made no pretense that he was acting under state law).

5. *See El Fundi v. Deroche,* 625 F.2d 195, 196 (8th Cir.1980) (action under color of state law when private security guard acted in concert with police officers or pursuant to customary procedures agreed to by police departments); *Duriso v. K-Mart,* 559 F.2d 1274, 1277 (5th Cir.1977) (court upheld jury determination of action under color of law when store had a regular form it used to initiate criminal complaint against suspected shoplifters that was part of customary plan with police); *Smith v. Brookshire Brothers, Inc.,* 519 F.2d 93, 94–95 (5th Cir.1975) (per curiam) (action under color of law when police took shoplifting suspects into custody according to prearranged plan whereby police did not conduct an independent investigation of the

■ Mindful of the Supreme Court's declaration in *Baker v. McCollan*, 443 U.S. 137, 142, 99 S.Ct. 2689, 2693, 61 L.Ed.2d 433 (1979), that not every tort amounts to a deprivation of constitutional rights, we must determine whether a reasonable jury could have found Gent's conduct amounted to a violation actionable under § 1983. Malicious prosecution does not automatically constitute a denial of due process. Nevertheless, if the misuse of the legal procedure is egregious there may be a deprivation of constitutional dimensions for which a plaintiff can invoke § 1983. *Norton v. Liddel*, 620 F.2d 1375, 1378 (10th Cir.1980); *see also Cline v. Brusett*, 661 F.2d 108, 112 (9th Cir.1981). We believe that when private parties or public officials use criminal complaints to coerce a release of civil liability from injured persons, this action, as a malicious prosecution, is egregious and qualifies as a deprivation of due process that violates the Fourteenth Amendment. *Cf. MacDonald v. Musick*, 425 F.2d 373, 375 (9th Cir.), *cert. denied*, 400 U.S. 852, 91 S.Ct. 54, 27 L.Ed.2d 90 (1970) ("It is no part of the proper duty of a prosecutor to use a criminal prosecution to forestall a civil proceeding by the defendant against policemen, even where the civil case arises from the events that are also the basis for the criminal charge."); *Dixon v. District of Columbia*, 394 F.2d 966, 969 (D.C.Cir.1968) (condemning agreement in which prosecutor bargained not to press criminal charges if injured party would release police officers from all civil liability).

The plaintiffs presented evidence of several instances of Gent's actions that, viewed as a whole, represent a denial of due process. Gent initially participated in bringing the charges against all three plaintiffs. Gent signed the citizen's arrest forms as well as most of the criminal complaints. Moreover, under Oklahoma law, Gent, as one of the injured parties, could have requested the court to drop those charges for which he received satisfaction. Okla.Stat.Ann. tit. 22, §§ 1291–1294. Thus, Gent could have sought to have the criminal charge of damaging private property dismissed after he received compensation for his broken eyeglasses, which, except for a few clay pots, was the only property destroyed in the T.G. & Y. scuffle. Instead, Gent and T.G. & Y. actively bargained with the Lusbys, seeking a release of civil liability before they would drop the charges. Such bargaining was outrageous in light of Gent's failure to question the T.G. & Y. cashier to see if Vaughn had paid for the sunglasses, and T.G. & Y.'s managers' knowledge moments after the incident that the cashier remembered selling a pair of sunglasses to a black man, whose face she never looked at, minutes before she sold hairspray to Vaughn Lusby. The latter evidence could have persuaded the jury that Gent and T.G. & Y. knew soon after the incident that the shoplifting charge against Vaughn was groundless, yet both Gent and T.G. & Y. kept this information from the prosecutor so that the charges were left pending for over seven months. Therefore, we must uphold the jury's verdict in favor of Vaughn Lusby's § 1983 claim against Gent.

■ Gent did not initiate the charges against Solomon and Alvin that arose after Wertz and Dunegan took them into custody, and it is not clear that he knew that those charges were groundless. Nevertheless, we conclude that the jury reasonably could have found Gent's conduct in connection with the other charges against Solomon and Alvin an unconstitutional violation of due process. His failure to seek to have the charges dismissed once he had overwhelming evidence that Vaughn had paid for the sunglasses could be regarded as an egregious case of malicious prosecution. In so holding, we note that Oklahoma law permits suspects reasonably to resist an unlawful arrest by a peace officer who attempts to arrest the suspect for a misdemeanor not committed in the officer's presence. *Sandersfield v. State*, 568 P.2d 313, 315 (Okla.Crim.App.1977) (per curiam);

---

criminal charges), *cert. denied*, 424 U.S. 915, 96 S.Ct. 1115, 47 L.Ed.2d 320 (1976); *cf. White v. Scrivner Corp.*, 594 F.2d 140, 143–44 (5th Cir.

1979) (no color of law because police department had policy of independently investigating before making arrests for shoplifting).

*Walters v. State,* 403 P.2d 267, 275 (Okla. Crim.App.1965). Relatives of a suspect are privileged to come to the suspect's aid as long as the suspect himself is justified in using self-defense against excessive force by a police officer. *Carter v. State,* 507 P.2d 932, 933–34 (Okla.Crim.App.1973). Therefore, the jury could have concluded that Solomon's and Alvin's attempts to free Vaughn from Gent's chokehold were privileged assaults and batteries. Consequently, for Gent and T.G. & Y. to use such charges as a bargaining chip in exchange for a release of civil liability also violated Solomon's and Alvin's constitutional rights.

■ Finally, Gent may not escape liability for his constitutional violations by invoking the qualified immunity accorded to state officials. He was not entitled to an instruction on qualified immunity because even if he qualified for such immunity once he slipped into his police role during the T.G. & Y. incident, he forfeited it by acting unreasonably when he investigated the alleged shoplifting. *See Allred v. Svarczkopf,* 573 F.2d 1146, 1153 (10th Cir. 1978). The law evaluates such conduct primarily by objective standards, determining whether a reasonable person would have known he was violating a constitutional or statutory right. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 396 (1982). In this case there is evidence that Gent did not check with the clerk operating the checkout line to see if Vaughn paid for the sunglasses. Moreover, Gent refused to let Vaughn get the cashier's attention at a time when her memory would still have been fresh.

**B**

■ The City of Lawton contends that the district court erred in refusing to direct a verdict for the city on plaintiffs' § 1983 claims. A city is not liable under the doctrine of respondeat superior in a § 1983 suit. *Monell v. Department of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Lawton is liable under § 1983 only if the police officers deprived plaintiffs of their constitutional rights pursuant to a policy or custom of the city. *See id.*

■ As noted above, the record contains evidence of an impermissible city policy that delegates a nondelegable duty and facilitates private abuse of criminal charges. The Lawton police department did not routinely investigate merchants' allegations of shoplifting before arresting suspects that the merchant designated. The Lawton police chief testified that his department had a policy of not conducting any independent investigation before taking a person into custody who has been made the subject of a citizen's arrest. In addition, the Lawton Police Department provided T.G. & Y. with special forms that the police prepared for merchants who detained suspected shoplifters. These forms apparently allowed city police officers discretion to issue a summons to suspects when they arrived at the store, without taking the suspects to jail.

That Officers Wertz and Dunegan adhered to this policy of no independent investigation is apparent from their testimony. They picked up the Lusbys, handcuffed and frisked them, and immediately took them to jail. They did not interview any witnesses or conduct any inquiry to determine whether probable cause existed to arrest. At the time Wertz and Dunegan took the Lusbys into custody Gent had not completed the citizen's arrest form. There is evidence that the city never investigated the incidents charged against plaintiffs, or if it did, that it left the charges pending despite overwhelming evidence that no shoplifting occurred. Therefore, the trial judge properly submitted to the jury the question of the City of Lawton's liability for a § 1983 violation. As a result, we need not consider whether the city's policies for supervising and disciplining its police officers amounted to an unconstitutional procedure, or whether allegations of police officer brutality sufficed to establish a pattern of such misconduct.

**C**

T.G. & Y. contends that the trial court erred in submitting to the jury plaintiffs' § 1983 claims against it because plaintiffs

offered no evidence that T.G. & Y. acted under color of state law. T.G. & Y. is not liable for a civil rights violation simply because it employed Gent. We have held that a private entity that employs an off-duty police officer is not vicariously liable for its employee's deprivations of citizens' civil rights. *Draeger v. Grand Central, Inc.*, 504 F.2d 142, 146 (10th Cir.1974); *see also Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir.1982).

■ Nevertheless, T.G. & Y. and its managers acted under color of state law within the meaning of § 1983, because they were acting in concert with the Lawton police according to a customary plan for dealing with shoplifters that involved a constitutionally forbidden rule or procedure. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982). Because Lawton's official policy was to not independently investigate citizen allegations of misdemeanors prior to arresting suspects for such misdemeanors, T.G. & Y. had authority to bring its own criminal charges by initiating a citizen's complaint, knowing the city would not exercise any check on such charges. Thus, T.G. & Y. exercised a state inquisitorial right.

Acting under color of state law, T.G. & Y. violated the plaintiffs' constitutional rights when it used the threat of criminal charges as a bargaining chip for a release of civil liability. The evidence suggested that T.G. & Y.'s policy was always to seek a release of liability as a condition for dropping criminal charges. T.G. & Y. even had a special form made up that required suspects to confess their guilt and release T.G. & Y., its officers and employees from all claims for damages. This is the form that T.G. & Y. sought to have the Lusbys sign in order to have the charges dropped. Accordingly, the jury could reasonably have concluded that T.G. & Y. was liable under § 1983.

### D

Officers Wertz and Dunegan assert that the judgments against them based upon § 1983 must be reversed. Wertz and Dunegan do not contest that they acted under color of state law; they do contest the jury's finding that they deprived plaintiffs of a constitutional right.

■ We have no problems with Alvin Lusby's claims against Wertz and Dunegan based on Wertz' conduct while transporting Alvin to jail. A police officer's use of excessive force is actionable under § 1983 as a constitutional violation. *Garrick v. City of Denver*, 652 F.2d 969, 972 (10th Cir.1981); *see also Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir.1981). The plaintiffs presented ample evidence that Wertz struck Alvin on the face without cause while he was handcuffed outside the Lawton police station and then shoved Alvin head first into a wall on the way into the station. From this evidence the jury could have concluded that Wertz used excessive force against Alvin.

■ We find unpersuasive Dunegan's argument that he should not be liable for his failure to stop Wertz' assault upon Alvin. An officer who fails to perform a duty may be liable under § 1983 if that failure causes deprivation of protected rights. *McClelland v. Facteau*, 610 F.2d 693 at 696 (10th Cir.1979). Thus, although Dunegan was not liable merely because he was present at the scene of a constitutional violation, *Russ v. Ratliff*, 538 F.2d 799, 805 (8th Cir.1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753 (1977), he may be liable if he had the opportunity to intervene but failed to do so. *Hampton v. Hanrahan*, 600 F.2d 600, 626 (7th Cir.1979) *rev'd in part on other grounds*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (per curiam); *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir.1972). Plaintiffs presented evidence suggesting that Dunegan could have prevented or stopped Officer Wertz' assault on Alvin Lusby. Thus, the trial court properly denied Dunegan's motion for a directed verdict.

■ With respect to Vaughn's and Solomon's civil rights claims against Wertz and Dunegan, plaintiffs contend the officers conducted an unconstitutional strip search. Wertz and Dunegan, on the other

hand, claim they conducted the strip search because they found a roach clip on Solomon and marijuana in the police car, allegedly placed there by one of the plaintiffs while being transported. They also claim to have received information that one of the Lusbys was carrying a large knife. A strip search is not improper when a suspect is going to be placed in the general jail population and has been charged with a drug offense such as possession of marijuana. *See Hill v. Bogans,* 735 F.2d 391, 394 (10th Cir.1984). Although defendants presented no supporting evidence about the knife they thought a plaintiff might have or of the marijuana they claimed they found, we believe a reasonable jury could not find that the strip searches were unconstitutional and actionable under § 1983.

 Plaintiffs also contend that Wertz' and Dunegan's arrest of plaintiffs at the T.G. & Y. store, based solely on Gent's accusations and without any independent police investigation to ascertain probable cause, supports the jury's finding of a civil rights violation. Police do not violate the Constitution when they arrest a person relying in good faith on a warrant that appears on its face to be valid but later proves deficient. *Baker v. McCollan,* 443 U.S. 137, 143–45, 99 S.Ct. 2689, 2694–95, 61 L.Ed.2d 433 (1979). But they do violate the Constitution when they make a warrantless arrest without probable cause. *See Draeger v. Grand Central, Inc.,* 504 F.2d 142, 144–45 (10th Cir.1974); *Patzig v. O'Neil,* 577 F.2d 841, 848 (3d Cir.1978); *Duriso v. K-Mart,* 559 F.2d 1274, 1277 (5th Cir.1977) (per curiam); *Sartin v. Commissioner of Public Safety,* 535 F.2d 430, 434 (8th Cir.1976); *Street v. Surdyka,* 492 F.2d 368, 371–73 (4th Cir.1974). We do not consider *Hudson v. Palmer,* —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), and *Par-*

*ratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), to require a different holding. Those cases involved deprivation of property, for which state post-deprivation remedies were considered adequate. A false arrest involves a deprivation of liberty; no post-deprivation remedy in the form of damages can ever fully compensate for time wrongfully spent in custody. *See Parratt,* 451 U.S. at 545, 101 S.Ct. at 1918 (Blackmun, J., concurring).

The trial court instructed the jury on the elements of probable cause and on Officer Wertz' and Dunegan's qualified immunity as police officers. There was sufficient evidence from which the jury could conclude that a reasonable police officer in Officer Wertz' and Dunegan's position would have known he was violating the Lusbys' constitutional or statutory rights.[6] Therefore, the trial court acted properly with respect to the claims against Wertz and Dunegan, and we must affirm the jury's verdicts.

### III

The City of Lawton and its police officers, Wertz and Dunegan, contend that the trial court erred in failing to dismiss plaintiffs' pendent state law claims against them as barred by the Oklahoma Political Subdivision Tort Claims Act, Okla.Stat. Ann. tit. 51, §§ 151–170. Section 156(B) of that act provides,

> "A claim against a political subdivision or employee shall be forever barred unless notice thereof is filed with the clerk of the governing body of the political subdivision within one hundred twenty (120) days after the loss occurs."

---

**6.** In this case the jury found that Wertz and Dunegan had committed false arrests only against Solomon and Alvin; it found for Vaughn on the pendent false arrest claims only against Gent and T.G. & Y. The trial judge's instruction on the elements of the Oklahoma tort of false arrest parallels the elements of a § 1983 violation founded on events involving a false arrest: the police make a warrantless arrest without probable cause. In such circumstances it would seem the jury should have reached the same conclusion on both claims. Such inconsistency does not require reversal of the judgment, however, so long as there is sufficient evidence to support the jury's verdict on the claim on which they found liability. *See Malm v. United States Lines Co.,* 269 F.Supp. 731, 731–32 (S.D.N.Y.), *aff'd per curiam,* 378 F.2d 941 (2d Cir.1967).

Plaintiffs did not give written notice of their claims to the city clerk before they filed this suit.

The Oklahoma courts have not required strict compliance with § 156(B). Instead, as the Oklahoma Supreme Court has emphasized, "The object of the statute must be kept in mind, and it should not be given a construction which will defeat the ends of justice." *Reirdon v. Wilburton Board of Education*, 611 P.2d 239, 241 (Okla.1980) (footnote omitted). Thus, in *Duesterhaus v. City of Edmond*, 634 P.2d 720, 723 (Okla.1981), the court held that the plaintiffs satisfied § 156(B) by verbally notifying the city attorney of their claim against the city and negotiating with him concerning settlement. Although those plaintiffs did not strictly comply with § 156(B), the court found that they substantially complied with that provision because they gave the city sufficient notice of their claim to fulfill the purposes of the statute: to give the city the opportunity to promptly investigate the claim, to repair any dangerous conditions, to quickly settle the claim if it was meritorious, and to prepare to meet any potential liability. *Id.*

▩ Similarly, in this case, Lawton city employees Charles Gent and Eddie Hargraves tried to convince plaintiffs to enter into an agreement whereby plaintiffs would release the private party defendants from civil liability in exchange for dismissing the criminal charges against plaintiffs. As the trial court noted, "Obviously, the City had notice of possible civil claims which might be filed so that they could investigate the claims and determine their validity." Plaintiffs substantially complied with the notice provision within 120 days after they suffered their losses. Indeed, plaintiffs' malicious prosecution claim did not arise until after the prosecutor dismissed the charges against them. *See Coleman v. Strong*, 105 Okla. 282, 232 P. 378, 379 (1925). Thus, as in *Duesterhaus*, plaintiffs' failure strictly to comply with the requirements of § 156(B) did not undermine the purposes of the statute. Accordingly, we agree with the trial court that § 156(B) does not bar plaintiffs' pendent claims.

## IV

▩ Gent argues that the trial court erred in permitting plaintiffs to introduce into evidence portions of Gent's police department personnel profile. Gent's psychological profile states, "this man is somewhat suspect in the direction of trying to 'appear good'.... Because of the possibility that Mr. Gent might tend to 'fake good' it may be necessary to observe him rather closely to determine if the personality characteristics noted above are actually a part of him." Plaintiffs' Ex. 17. The City of Lawton Employee Performance Evaluation states that during Gent's initial years of employment he had to "muster his inner resources to gain control of his temper ...." Plaintiffs' Ex. 36. Contending that this evidence tends to show that he had a bad temper, Gent argues that the evidence is relevant only to show he acted in conformity with his character when he apprehended the Lusbys, an impermissible purpose under Fed.R.Evid. 404(a). Alternatively, even if the evidence is otherwise relevant, Gent contends that its prejudicial impact substantially outweighed its probative value. Fed.R.Evid. 403.

The statement in Exhibit 17 is not prejudicial. Although the statement in Exhibit 36 tends to show that Gent at one time had a bad temper, it also indicates that Gent controlled it. The record is replete with evidence of Gent's conduct on the day he apprehended the Lusbys. We therefore are convinced that the challenged evidence did not affect the jury's verdict, and that if the trial court erred in admitting the evidence, it was harmless error.

## V

The jury found T.G. & Y. liable to Vaughn Lusby on the § 1983 claim and on the pendent claims of false arrest and malicious prosecution. It awarded punitive damages of $50,000 to Vaughn against T.G. & Y. T.G. & Y. argues that none of its conduct was sufficiently outrageous to warrant the jury's award of punitive damages.

Punitive damages are available in a § 1983 action when a "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). The standard for awards in § 1983 actions is essentially the same as that for common law torts. *Id.* at 48–49, 51, 103 S.Ct. at 1636–1637, 1639; *see also id.* at 48 n. 13, 103 S.Ct. at 1636 n. 13 (noting congruence between federal standard in § 1983 actions and Oklahoma standard for punitive damages as described in *Smith v. Johnston*, 591 P.2d 1260, 1264 (Okla.1978)). In Oklahoma, a jury may award punitive damages for false arrest or malicious prosecution. *Moore v. Target Stores, Inc.*, 571 P.2d 1236, 1240–41 (Okla. Ct.App.1977). The jury must find that the wrongdoer acted "willfully, wantonly or in reckless disregard of the rights of another, resulting in injury." *White v. Conoco, Inc.*, 710 F.2d 1442, 1448 (10th Cir.1983).

There is ample evidence in the record from which the jury could have concluded that T.G. & Y. acted with reckless disregard or callous indifference to Vaughn Lusby's rights. T.G. & Y. kept the criminal charges against the Lusbys pending for over seven months even though it knew within minutes of apprehending Vaughn Lusby that he had paid for the sunglasses that he allegedly shoplifted. Malice is an element of the tort of malicious prosecution, for which the jury found T.G. & Y. liable. Similarly, the thrust of the Lusbys' civil rights claim was that T.G. & Y. abused its position of trust with the city by maliciously prosecuting the Lusbys upon citizen's complaints. Therefore, we must uphold the jury's award of punitive damages.

## VI

T.G. & Y. and Gent contend that the trial court erred in instructing the jury on future medical expenses and future loss of earnings, citing *Carraco Oil Co. v. Morhain*, 380 P.2d 957 (Okla.1963). In *Carraco* the court held that there was no basis for the jury to assess future medical expenses for the cost of an operation when the plaintiff did not present any testimony that he would have to undergo the operation. *Id.* at 959. Nevertheless, the court did not set aside the jury's verdict. Instead, it affirmed but reduced the verdict by an amount representing the maximum cost of the disputed operation. *Id.* at 961. The following year, the Oklahoma Supreme Court explained its holding in *M.K. & O. Airline Transit Co. v. Deckard*, 397 P.2d 888, 889 (Okla.1964), saying that *Carraco* "did not require to be shown the probable cost of further medical needs." The court's concern was merely that the evidence in the case show with reasonable certainty the necessity for future expenditures. *Id.* The opinion in *M.K. & O. Airline Transit Co.* affirmed a jury verdict based on an instruction on future medical expenses when the plaintiff presented a doctor's report stating that the cause of his eye pain had not been determined and that the doctor advised observation and further studies. *Id.* Plaintiff's daughter, for whom he was also suing, was riding in the automobile when it crashed, and plaintiff presented evidence that she would probably need psychiatric treatment. *Id.* at 889.

The Lusbys did not present specific evidence suggesting they would require future medical treatment. They did present an expert, Moorman Prosser, M.D., who testified to some of the possible future physical and mental ailments that plaintiffs may suffer as a result of the T.G. & Y. incident. Dr. Prosser did not discuss even approximate damage amounts or specific courses of treatment. We cannot conclude with reasonable certainty that any of the Lusbys will require future medical care. Therefore, it was error for the judge to instruct the jury about such future medical expenses. Nevertheless, we conclude that it was harmless error that did not affect the jury's determination of damages. Dr. Prosser's testimony did not suggest any particular treatment that plaintiffs would have to undergo. As a result the jury did not hear any facts from which it could have inferred that the Lusbys would incur future medical expenses. The size of the jury awards also indicate that it is unlikely

they included any amount for future medical treatment.

 We find no error in the court's giving the instruction on impairment of future earnings. Plaintiffs presented evidence that Vaughn's professional football career may have been impaired and that Solomon and Alvin may have suffered setbacks in seeking employment because of the stigma surrounding their arrest at T.G. & Y. It was up to the jury to weigh the credibility and significance of such evidence.

## VII

 All defendants argue that the trial court erred in awarding attorney's fees to plaintiffs in excess of the amount provided for in plaintiffs' contingent fee agreement with their attorneys. Our en banc decision in *Cooper v. Singer*, 719 F.2d 1496, 1503 (10th Cir.1983), determined this issue. We there held that a fee award under 42 U.S.C. § 1988 is not limited by a contingent fee agreement between the client and his attorney. Therefore, the trial court did not err in awarding attorney's fees in excess of the amount that plaintiffs' attorneys would have received under the contingent fee agreement.

In view of our affirmance of the award against T.G. & Y. on the § 1983 claims, we need not consider T.G. & Y.'s argument that those claims were so lacking in substance that the court could not assume pendent jurisdiction over the claims based upon state law. *See Mendoza v. K-Mart, Inc.*, 587 F.2d 1052, 1056–57 (10th Cir. 1978). We also need not consider whether a jury's general verdict for lump-sum damages may be upheld on appeal when the appellate court strikes down one of several bases for liability because we have upheld every basis of liability.

AFFIRMED.