NATHANIEL R. JONES, Senior Circuit Judge,
concurring in part and dissenting in part.
I fully concur in Parts 1(e), III and IV of the opinion and in the result reached in Parts 1(a) and II.[1] I respectfully dissent, however, from Part 1(b).
*1512 In Part 1(b) the majority holds that the district court did not err in granting summary judgment in favor of Officers Fisher and Reeve and Dispatcher Murphy on Haines’ § 1983 claims, finding that the defendants’ actions were not under color of state law. After applying the relevant law to the facts in this case, I have come to a different conclusion. The defendants’ enterprise was performed under color of state law; hence, summary judgment to the defendants on that issue was inappropriate.
While it is a standard principle that the acts of officers in the gambit of their personal pursuits are not under color of state law and thus are not grounds for liability, it is equally incontrovertible that “[a]cts of officers who undertake to perform their official duties are included whether they hew to the line of authority or overstep it.” Screws v. United States, 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495 (1945). Moreover, a defendant is said to be acting under color of state law when he exercises power “possessed by virtue of state law and [his actions are] made possible only because the wrongdoer is clothed with the authority of state law.” West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988) (quoting United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941)).
This case does not involve merely a situation wherein Officer Reeve entered the 7-11 alone, disguised as a robber. If that were the only fact before the court, it is possible that such an action would not be considered taken under color of law. The defendants in this ease, however, conspired to deprive Haines of his constitutional rights and effectuated their strategy by abusing the power they held under state law. Indeed, the defendants’ prank was a complicitous scheme which could only be accomplished through the use of their public positions, while performing their official duties.
In addition to the fact that the dispatcher and officers were on-duty and in uniform[2] (excepting Reeve, who wore other clothes belonging to the police department): (1) the defendants concocted the prank in response to Haines’ earlier call to report suspicious vehicles;[3] (2) all material used to effectuate the prank was Torrington Police Department property, including the M-16 rifle, the blanks, the trench coat, the mask, the police cars, the radio, and the dispatch telephone system; (3) the plan was created and agreed to by all officers while in the police station working on training exercises; (4) the dispatcher, Murphy, called in his official capacity to warn Haines of potential danger; (5) Sgt. Fisher, using the police radio, radioed Murphy to direct him to make the call, and *1513 Murphy called, using an unrecorded police line; (6) in order to control the situation and protect the public (a typical responsibility of officers acting in their official capacity), two uniformed officers and marked police cars were stationed outside the 7-11; and (7) Sgt. Fisher, the highest ranking officer on-duty, masterminded the scheme and “gave orders” to subordinates on how to carry it out.
It is true that almost anybody can stage a robbery; but, only police officers can use police radios, order dispatchers to make calls, and have police cruisers posted outside while uniformed men serve as lookouts to protect the malefactors from discovery or the public from harm. Under these circumstances, the defendants certainly employed power possessed by virtue of state law and their actions were made possible only because they were clothed with the authority of the state. See Atkins, 487 U.S. at 49,108 S.Ct. at 2255. Thus, regardless of the impropriety, perversion and temerity of the defendants’ scheme, as a matter of law their actions were taken under color of law.

. In Part 1(a) the majority finds that the Town of Torrington did not have a policy, custom, or practice adopting or approving the activity surrounding the staged robbery. I agree. The majority, however, applied the case of Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), to reach its conclusion. Monell dealt only with the concept of municipal liability for broad official policies or customs and was further refined by the case of Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). In Pembaur, *1512 the Court held that a single incident may be evidence of a policy when the conduct represents a decision of authorized policy makers. In this case, Haines alleged that Sgt. Fisher was an authorized policy maker and his decision to conduct the prank established a policy. As the facts do not support such a conclusion, I find that under Pembaur, summary judgment was proper for the Town of Torrington.
In Part II the majority finds that the district court did not abuse its discretion by refusing to instruct on negligence. Because I view the district court’s approach to the issue of negligence as a sua sponte judgment as a matter of law, I believe the propriety of instructing the jury on plaintiff's negligence claim should be reviewed de novo. Nonetheless, I have concluded, for the same reasons discussed by the majority, that the issue was properly withheld and there was no error.

. I do not imply that the defendants were acting under color of law solely because they were on-duty and in uniform. See Lusby v. T.G. & Y Stores, Inc., 749 F.2d 1423 (10th Cir.1984) (concluding that an officers on or off-duty status is not dispositive of whether he is acting under color of law.); accord Layne v. Sampley, 627 F.2d 12 (6th Cir.1980). A defendant's duty status and attire is relevant in determining whether actions were taken under color of law only when considered alongside the defendant's conduct.

. The majority suggests that the prank was conceived to intimidate and lure Haines into an alternative lifestyle. I fail to see how such a prank could accomplish that end, but, more importantly, Haines has alleged also that the prank was initiated as retaliation, in response to his earlier call. See Maj. Op. [1505, fh. 1]. As we must draw all reasonable inferences in favor of a nonmoving party when reviewing the grant of summary judgment, these two "reasons” for the prank should, at a minimum, be considered consistent co-existing motivations, or in the alternative, the more plausible should be inferred. Notwithstanding, other factors exist which also lead me to conclude that the defendants’ actions were under color of law.