**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 19 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DOUGLAS G. DRY,

     Plaintiff - Appellant,

vs.

CITY OF DURANT; ROSCOE
HATFIELD, Mayor of Durant; DAVID
NORRIS, Vice-Mayor of Durant; RON
REED; J. C. CURTIS; MIKE
PATTERSON; JACK JONES;
DOUGLAS KEITH CHILDERS; BEN
VEENSTRA; RONNIE HAMPTON;
CHRIS CICIO; JOHN DOE, an
unknown person, in their official and
individual capacities,

     Defendants - Appellees.

No. 99-7137
(D.C. No. 97-CV-344-B)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **MCKAY**, and **KELLY**, Circuit Judges.

     Plaintiff-Appellant Douglas G. Dry appeals from the district court's grant

of summary judgment in favor of Defendants-Appellees. Our jurisdiction arises

under 28 U.S.C. § 1291 and we affirm.

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## Background

The following material facts are undisputed. The Choctaw Nation's annual Labor Day festival is held near Tuskahoma, Oklahoma, approximately one hundred miles from the City of Durant, on land held in trust for the Choctaw Nation of Oklahoma ("the Choctaw Nation" or "the Nation") by the United States. Aplt. App. at 105, 112, 126, 128. At all times relevant to this action, Kim Reed was the Director of Law Enforcement for the Choctaw Nation. Id. at 98. Defendants Ronnie Hampton, Ben Veenstra, Chris Cicio, and Douglas Childers were regularly employed as police officers of the City of Durant. Id. at 102-03. In May 1996, Ms. Reed contacted Mr. Hampton to ask whether he or any of his co-workers would be interested in off-duty employment with the Nation as security guards at the 1996 Labor Day festival. Id. at 99, 102.

In general, regularly-employed police officers of the City of Durant were permitted to accept off-duty employment so long as such employment did not interfere with their duties to the City – i.e., did not create a conflict of interest or bring the City or the Police Department into disrepute. Id. at 128. Officers of the City of Durant were instructed that their police authority extended only to the time during which they were on duty as police officers, and solely within the City's geographical limits. Id. at 128, 130. If an officer's off-duty employment caused him to be absent from his regular duties for any reason, the time missed

was deducted from his accrued leave.     Id. at 106, 112.

Ultimately, the Choctaw Nation hired Mr. Hampton, Mr. Childers, Mr. Veenstra, and Mr. Cicio to work at the festival.     Id. at 103.  The Nation paid the officers $15.00 per hour and reimbursed them for mileage traveled to and from tribal grounds.    Id. at 113-25.  On August 30, 1996, the officers reported for duty to Tribal Chief of Police Hoppy Denison, who briefed them on their duties and the scope of their authority as tribal security officers.     Id. at 103, 108, 110.  As part of his briefing, Chief Denison described Council Bill CB-113-96, a tribal ordinance which prohibited "political activity or advocacy for a particular cause" on tribal grounds without a permit, and which limited such activity to areas designated by the Labor Day Committee.     Id. at 72.  Chief Denison told the officers that if they saw anyone whom they believed to be in violation of CB-113-96, they were to ask the person to stop and return to the designated area.  If the person refused, the officers were to call a regular tribal police officer to make the arrest.  Id. at 103, 108, 110.  Chief Denison instructed the officers that they were authorized to make arrests for violations of other tribal laws, but that they were not authorized to enforce the laws of any other entity, including Oklahoma or the City of Durant.   Id.  The officers understood that their only authority on tribal grounds was as tribal security officers.     Id. at 103, 110.

On September 2, 1996, Mr. Veenstra and Mr. Hampton were informed that

several people engaged in political activity had left the designated area carrying materials they had been distributing. Id. at 104. When the officers intercepted the group, the first person they encountered was Plaintiff Douglas G. Dry. Id. at 104, 111. The officers were wearing their City of Durant police uniforms. Id. at 105. Mr. Dry was carrying political brochures. Id. at 33. Officer Veenstra asked him several times to stop and "talk . . . for just a minute," but Mr. Dry refused. Id. at 35. Via radio, Mr. Hampton advised tribal police officers of the situation and requested assistance. Mr. Veenstra, Mr. Hampton, and a third security officer then forcibly stopped and restrained Dry. Id. at 105, 111.

Within minutes, Chief Denison arrived at the scene, told the officers that it would be preferable to have a warrant before arresting Mr. Dry, and directed them to release him. The officers complied with this instruction, and Mr. Dry walked away. Id. at 105, 109, 111. Mr. Dry was eventually charged under tribal law with "assault and battery upon a police officer," [1] id. at 38, and with violating CB-113-96. Id. at 32. The CB-113-96 charge was dismissed on February 13, 1997, when tribal officials realized that the bill had never been presented to or approved by

---

[1] According to the defendants, Mr. Veenstra had stepped in front of Mr. Dry to block his path and Mr. Dry had run into him forcefully, nearly knocking Mr. Veenstra to the ground. Id. at 104, 111. It was at that point that Mr. Veenstra, Mr. Hampton, and a third security officer "forcibly stopped and restrained Dry for the assault." Id. at 111; see also id. at 105. According to Mr. Dry, he "did not, nor did [he] attempt to in any way, physically touch any officer." Id. at 33. This dispute is not material to our analysis.

the Bureau of Indian Affairs, as required by 25 C.F.R. § 11.123(e).  Id. at 32.  At no time relevant to this action was Chief Denison aware of this procedural defect, nor were the officer defendants or any other law enforcement officer.  Id. at 108-09.

Mr. Dry filed this federal lawsuit on May 30, 1997, asserting claims under 42 U.S.C. § 1983 ("§ 1983") and the Oklahoma Governmental Torts Claims Act ("OGTCA"), and sought compensatory damages, attorneys' fees and costs, and punitive damages.  As defendants, he named the City of Durant; John Doe, an unidentified man "acting in a law enforcement capacity for an unnamed agency," id. at 60, ¶ 16; Officers Hampton, Veenstra, Cicio, and Childers ("the officers" or "the officer defendants"); and several (then) municipal officers of the City of Durant, including Chief Jones ("the supervisory defendants").  All of the individual defendants were sued in their official and individual capacities.  In September 1998, the district court dismissed the OGTCA claims against the officer defendants in their individual capacities for failure to state a claim.  Id. at 87-88.  In September 1999, the court dismissed the John Doe defendant and granted summary judgment for the named defendants on all remaining claims.  In this appeal, Plaintiff Dry does not challenge the dismissal of his OGTCA claims, nor does he argue that "John Doe" was improperly dismissed.  We therefore confine our analysis to the § 1983 claims.  See Adler v. Wal-Mart Stores, Inc.,

144 F.3d 664, 679 (10th Cir. 1998) (noting that issues not argued in appellant's opening brief are waived).

## Discussion

We review an award of summary judgment de novo, applying the same standard as the district court. Stamper v. Total Petroleum, Inc. Retirement Plan for Hourly Rated Employees, 188 F.3d 1233, 1237 (10th Cir. 1999). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the [appellees are] entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party, but we do not make credibility determinations or weigh the evidence. E.g., Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2110 (2000) (citations omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (noting that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). We need not echo the district court's reasoning, but may affirm for any reason supported by the record. Perry v. Woodward, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999), cert.

<u>denied</u>, 120 S. Ct. 1964 (2000).

In order to prevail on a § 1983 claim, a plaintiff must establish that the defendant acted under color of state law, and that the defendant's actions deprived the plaintiff of some constitutional right. <u>Sutton v. Utah State Sch. for the Deaf & Blind</u>, 173 F.3d 1226, 1237 (10th Cir. 1999). On appeal, Plaintiff Dry argues that "municipal officers are city officers" – <u>i.e.</u>, state actors – "when dressed in city uniforms, wearing city badges and driving city police cruisers when hired by a tribe as security guards." Aplt. Br. at 2. The plaintiff contends that the officers, acting under color of state law, "arrested [him] for exercising his free speech by 'possessing' political literature on tribal lands when an invalid and illegal [2] tribal ordinance forbid [sic] 'passing out' literature." <u>Id.</u> In response, the officer defendants claim that summary judgment was proper for three independent reasons: (1) they did not act under color of state law, (2) no constitutional violation occurred, and (3) they are entitled to qualified immunity under <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). Aplee. Br. at 9. Because we hold that the officers did not act under color of state law, we need not address the parties' other arguments. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986)

---

[2] Mr. Dry appears to claim that CB-113-96 is inherently "illegal" because the Choctaw Nation lacks criminal jurisdiction over its members. Aplt. Br. at 1, 10. We have already rejected this argument in a case arising out of Mr. Dry's arrest at the 1995 Labor Day festival. <u>See</u> <u>Dry v. United States</u>, No. 99-7110, --- F.3d ---, ---, 2000 WL _____, *__ (10th Cir. Dec. 19, 2000).

(holding that court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case").

It is well-settled that the "acts of officers in the ambit of their personal pursuits" are not "under color of law." Screws v. United States, 325 U.S. 91, 111 (1945). The mere fact that a defendant lacked actual state authority, however, is not determinative. As the Supreme Court has noted, if § 1983 "was designed to embrace only action which the State in fact authorized, the words 'under color of any law' were hardly apt words to express the idea." Id. (emphasis added). Rather, the "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is [also] action taken under color of state law." Monroe v. Pape, 365 U.S. 167, 184 (1961) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)), overruled on other grounds by Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658 (1978).

The Supreme Court has never held that objective indicia of state authority, without more, can bring an officer's otherwise "purely personal pursuits" within the scope of § 1983. In Griffin v. Maryland, 378 U.S. 130 (1964), the Court held that a security guard for a private amusement park acted under color of law when he asked African-American patrons to leave the park, and arrested and instituted

criminal proceedings against those who refused to comply. At the park's request, the guard had been deputized as a sheriff, and he wore a sheriff's badge during the encounter in question. Id. at 132. Although the badge was relevant to the "color of law" analysis, the Court also relied on the facts that the officer consistently identified himself as a deputy sheriff, made arrests, transported arrestees to the police station, and swore out a complaint against them on a form entitled "Application for Warrant by Police Officer." Id. at 133-35. The Court held that "[i]f an individual is possessed of state authority and purports to act under that authority, his action is state action." Id. at 135 (emphasis added); see also Lugar v. Edmondson Oil Co., 457 U.S. 922, 935 (1982) ("If the challenged conduct . . . constitutes state action . . . , then that conduct [is] also action under color of state law and will support a suit under § 1983.").

Lower courts have employed a totality of the circumstances approach in their analyses of "under color of state law" questions involving off-duty police officers and security guards. E.g., Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337, 348-49 (4th Cir. 2000), petition for cert. filed (U.S. Nov. 16, 2000) (No. 00-818); United States v. Walsh, 194 F.3d 37, 51 (2d Cir. 1999). In addition to considering such factors as a defendant's actual authority, e.g., Gibson v. City of Chicago, 910 F.2d 1510, 1517-19 (7th Cir. 1990); D.T. ex rel. M.T. v. Indep. Sch. Dist. No. 16, 894 F.2d 1176, 1186 (10th Cir. 1990) (state action), and

objective indicia of authority, *e.g.*, Lusby v. T.G. & Y. Stores, Inc., 749 F.2d 1423, 1428-29 (10th Cir. 1984),[3] courts have also examined subjective factors. These factors, which usually depend on the testimony of the parties, include the victim's perception of the encounter, *e.g.*, Robinson v. Davis, 447 F.2d 753, 758 (4th Cir. 1971), and the defendant's belief as to whether he was acting under color of state law, *e.g.*, Traver v. Meshriy, 627 F.2d 934, 938 (9th Cir. 1980). In this case, it is uncontroverted that the officers did not act pursuant to actual state authority, Aplt. App. at 128, 130, nor did they believe themselves to be clothed with such authority. Id. at 103, 110. In support of his contention that the officers were acting under color of state law, Plaintiff claims: (1) that "the defendant officers were wearing City of Durant uniforms and badges and carrying weapons assumed to be service issued;" (2) that the "officers did not correct or refute [Plaintiff's] statement" when he referred to them as Durant police officers; (3)

---

[3] The subsequent history of Lusby is somewhat complex. After our 1984 decision in Lusby, both the individual defendants and the municipal defendants filed petitions with the Supreme Court for a writ of certiorari. On October 7, 1985, the Court denied certiorari with respect to the individual defendants, 474 U.S. 818 (1985) (case no. 84-1759), and granted certiorari with respect to the municipal defendants. 474 U.S. 805 (1985) (case no. 84-1715). In the two-sentence order granting the municipal defendants' petition, the Court ruled that "[t]he judgment is vacated and the case is remanded to the United States Court of Appeals for the Tenth Circuit for further consideration in light of City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985)." 474 U.S. 805. On remand, we did not address the color of state law question, focusing exclusively on the impact of Tuttle. Lusby v. T.G. & Y. Stores, Inc., 796 F.2d 1307 (10th Cir.), cert. denied sub nom. City of Lawton, Oklahoma v. Lusby, 479 U.S. 884 (1986).

that the officers threatened to arrest and mace him, and that they did, in fact, restrain him; and (4) that the Choctaw Nation later charged him with assaulting a police officer. Aplt. Br. at 7.

We have found no evidence in the record to support the plaintiff's claim as to the officers' badges and weapons. With respect to the officers' threats against Plaintiff and his brief detention, the evidence indicates that the officers' actions were consistent with their duties and authority as security guards for the Choctaw Nation. Aplt. App. at 103-05, 108, 110-11. Nor are we persuaded of the materiality of the Information charging that Plaintiff committed an "assault and battery upon a police officer . . . in violation of Section 17-8 of the Criminal Code of the Choctaw Nation." Id. at 38.

A "police officer," as the term is used in Section 17-8, is "any duly appointed person who is charged with the responsibility of maintaining public order, safety, and health by the enforcement of all laws, ordinances, or orders of this Nation . . . and who is authorized to bear arms in execution of his responsibilities." Choctaw Criminal Code § 17-7(A), quoted in Aplee Br. at 17. This broad definition includes temporary security officers, regardless of the nature of their regular employment. Further, even if we indulge Mr. Dry by accepting his claim that Section 17-8 of the Choctaw Criminal Code does not prohibit assaults on tribal police officers, but only on police officers from other

jurisdictions, the tribal prosecutor's decision to charge Mr. Dry under that section would still be immaterial to our analysis. Similarly, the prosecutor's identification of the assaulted officer as "to wit: Durant Police Officer, Ben Veenstra," Aplt. App. at 38, is also irrelevant. Accordingly, the only potentially material facts are: (1) that the officers were wearing police uniforms at the time of the encounter, id. at 105, and (2) that they did not correct Mr. Dry when he referred to them as Durant Police Officers, id. at 35, 37. Taken together, we hold that this evidence is insufficient to create a genuine issue of material fact as to whether the officer defendants acted under color of state law.

The plaintiff relies heavily on this circuit's 1984 decision in Lusby for the proposition that the defendants' official attire, standing alone, is sufficient to establish action under color of state law. Aplt. Br. at 7. Contra Robinson, 447 F.2d at 759 ("It is plain that a state officer is not necessarily acting in his official capacity merely because he is clothed in official garb."). Plaintiff's reliance on Lusby is misplaced. In that case, we held that an off-duty police officer employed as a private security guard acted under color of state law when he arrested a suspected shoplifter. Lusby, 749 F.2d at 1430. There was evidence that the officer flashed his badge, identified himself as a Lawton police officer, placed the plaintiff under arrest and told him that he was going to jail, used police documents to complete the arrest forms, and, by his own admission, had trouble

distinguishing between his private and official roles. Id. at 1429-30 & n.2. There is no comparable evidence in this case.

Mr. Dry's brief states that "[t]o Plaintiff Dry, the defendant officers were acting under the color of state law by their dress and actions. When viewed through the eyes of the victim, or a third party, there was no other conclusion to reach except that Durant police officers were arresting and assaulting Dry." Aplt. Br. at 7. It is not clear whether Plaintiff included this language to summarize his indicia of authority argument or to direct our attention to an additional factor -- i.e., his belief in the officers' status as state actors. If Mr. Dry is asserting such a belief, there is no evidence in the record to support it. In order to survive summary judgment, the nonmoving party cannot rest on assertions in pleadings or briefs and must "make a showing sufficient to establish the existence of an element essential to that party's case . . . ." Celotex, 477 U.S. at 322. Mr. Dry's affidavit refers to the officers as "Durant police officers," but notably fails to state that he believed the officers were acting in their official capacity during the encounter at issue. Aplt. App. at 33-34. The transcript of the encounter is similarly vague. See id. at 35 (statement by Mr. Dry) ("You are with the Durant Police Department. I don't think you ought to be bothering me."); id. at 37 ("The Durant Police Department has me stopped here."). Although the nonmoving party is entitled to all reasonable inferences supported by the record, Reeves, 120 S. Ct.

- 13 -

at 2110, under the specific circumstances of this case, it is unreasonable to infer that Plaintiff believed the officers were acting under color of state law.

We agree with the district court that Plaintiff's statements during the encounter must be considered in light of his status as an attorney. Dry v. City of Durant, No. CIV-97-344-B, at 13 (Sept. 30, 1999). In addition, we take judicial notice of the record, filed by Mr. Dry, in another case before this court, see Van Woudenberg ex rel. Foor v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000), wherein Plaintiff Dry referred to his "broad, extensive background" in federal Indian law. Resp. by Pls. Dry et al. to R. Rabon's Mot. to Dismiss, at 2 Aplt. App. 327 n.2, Dry v. United States, No. 99-7110, --- F.3d --- (10th Cir. Dec. 19, 2000). Given the cardinal principle that Indian tribes are "distinct political communities, having territorial boundaries, within which their authority is exclusive," Okla. Tax Comm'n v. Sac & Fox Nation, 508 U.S. 114, 123 (1993) (quoting Worcester v. Georgia, 31 U.S. 515, 557 (1832)), we cannot infer that Plaintiff, an experienced attorney with a self-proclaimed expertise in federal Indian law, believed that the authority of the Durant Police Department extended to Indian country located approximately one hundred miles from the City of Durant.

In sum, we hold that the § 1983 claims against the defendant officers fail as a matter of law because the plaintiff cannot satisfy the jurisdictional prerequisite that the defendants acted under color of state law. Polk County v. Dodson, 454

- 14 -

U.S. 312, 315 (1981).  Because the claims against the supervisory defendants are derivative in nature, those claims cannot survive the dismissal of the claims against the officer defendants.  Accordingly, we affirm the dismissal of the derivative claims without reaching the supervisory defendants' causation arguments.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge