Donald H. **ARNOLD** and Pamela S. **Arnold, Plaintiffs,**

v.

Joel **TRUEMPER, individually and as a police officer, Naperville, Illinois; Donald Bisch, individually and as a police officer, Naperville, Illinois; City of Naperville and Regency Savings Bank, a Federal Savings Bank, Defendants.**

No. 92 C 6900.

United States District Court, N.D. Illinois, E.D.

Aug. 26, 1993.

---

Michael F. Harvey, Wheaton, IL, for plaintiffs.

Michael M. Roth, Howard P. Levine, Paul L. Stephanides, Naperville, IL, for defendants Joel Truemper, Donald Bisch and City of Naperville.

Michael R. Kolloway, Kevin W. Horan, Rock, Fusco, Reynolds & Garvey, Chicago, IL, for defendant Regency Sav. Bank.

*MEMORANDUM OPINION AND ORDER*

ALESIA, District Judge.

On October 14, 1992, plaintiffs filed a two-count complaint alleging the violation of 42 U.S.C. § 1983 and 15 U.S.C. § 1692. Before the court are the motions of defendant Regency Savings Bank ("Regency") and defendants Joel Truemper, Donald Bisch and the City of Naperville to dismiss the plaintiffs' complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth in this order the court grants defendants' motions to dismiss.

## I. STATEMENT OF FACTS

According to the defendants, Regency mistakenly credited plaintiffs' bank account with a deposit in the amount of $20,000 when plaintiffs had only deposited $2,000. Upon discovering this error, Regency demanded that plaintiffs return the amount of $18,000 which had been credited to their account in error. When the plaintiffs refused to return the funds, Regency suspected plaintiffs had committed a theft and therefore contacted the Naperville Police Department as Regency believed it was obligated to do in adherence to federal regulatory requirements.[1] It is Regency's conduct and the ensuing conduct of police officers Joel Truemper and Donald Bisch, who investigated Regency's charge, of which plaintiffs complain.

Count I of the complaint alleges that the defendants "conspired with each other to deprive the plaintiffs of due process of law and their right of privacy and equal protection of the laws, by arbitrarily and irrationally attempting to collect an alleged civil debt purportedly owed plaintiffs to [Regency] by threats of criminal prosecution, coercion and harassment. . . ." Complaint, at ¶ 9. Specifically, plaintiffs' complaint contains the following claims. First, plaintiffs allege that Regency filed a criminal charge against the plaintiffs with defendant City of Naperville that plaintiffs had "passed a 'bad check'."

Complaint, at ¶ 9(a). Plaintiffs allege that this "act was irrational and without legal justification and was done for the purpose of pursuing a civil matter." *Id.* Second, plaintiffs allege that police officers Truemper and Bisch "arbitrarily harassed the plaintiffs at their home and at their respective places of employment by letting it be known that plaintiffs purportedly owed $18,000.00 to [Regency], without first determining whether or not any criminal activity had occurred by the plaintiffs. . . ." Complaint, at ¶ 9(b). Third, plaintiffs allege that Truemper and Bisch, "on their own, arbitrarily threatened plaintiffs with criminal prosecution, if plaintiffs did not pay the $18,000.00" to Regency Savings Bank and did so "without legal justification." Complaint, at ¶ 9(c). Fourth, plaintiffs allege that Truemper and Bisch "deliberately and arbitrarily told plaintiffs' children [ages 17, 14, and 11] that the plaintiffs owed $18,000.00 to [Regency] and would be subject to criminal prosecution, if the plaintiffs did not repay the money. . . ." Complaint, at ¶ 9(d).

Based upon these facts, plaintiffs claim they were denied "the right to be free from harassment by police in civil disputes; the right to pursue redress of the civil courts without coercion by the police; and the right to privacy to protect their individual interests in *avoiding disclosure of personal matters to their children*; all of which are guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983." Complaint, at ¶ 12. Plaintiffs further contend that the City of Naperville caused these alleged constitutional violations "by a practice, policy and custom of failing to properly train, supervise and discipline police officers, including the individual defendants herein, regarding constitutional restraints on the police power regarding due process of law and right of privacy." Complaint, at ¶ 13.

Count II of the complaint alleges that Regency violated the Fair Debt Collection Prac-

---

1. Regency, a federal savings bank, is required to adhere to all applicable federal statutes and regulations affecting federal savings banks. Section 563.180(d) of the Regulations of the Office of Thrift Supervision states in.relevant part that

"Savings associations and service corporations are required to promptly notify the appropriate law enforcement authorities ... after discovery of known or suspected criminal acts...."

tices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") by using tactics that were unfair and harmful to plaintiffs in collecting an alleged debt. Complaint, at ¶ 20. Specifically, plaintiffs claim that Regency violated the FDCPA by using fear, coercion, threats and harassment by the police to collect an alleged debt. *Id.* Plaintiffs allege that the FDCPA is implicated because Regency attempted to have the City of Naperville, through its police officers, Truemper and Bisch, "attempt to collect a debt allegedly owed to defendant [Regency] by plaintiffs for $18,000.00 through intimidation...." Complaint, at ¶ 17. The plaintiffs thus allege that Regency, by using the City of Naperville and the police officers to collect an alleged debt, "used a third person to collect a debt" and therefore Regency is a "debt collector" under 15 U.S.C. § 1692. Complaint, at ¶¶ 18 and 19.

## II. ANALYSIS

Defendants move to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Moreover, with respect to plaintiffs' complaint against the City of Naperville, according to the recent Supreme Court decision *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), federal courts may no longer apply a heightened pleading standard, more stringent than the usual pleading requirements, to civil rights cases alleging municipal liability under § 1983. *Id.* at 1163. The court will review the present motions with these standards in mind.

### A. COUNT I: 42 U.S.C. § 1983

Plaintiffs' complaint alleges that defendants Regency, Truemper, Bisch and the City of Naperville violated their civil rights under § 1983. To state a cause of action under § 1983, plaintiffs must allege two es-

sential elements. First, plaintiffs must show that defendants engaged in conduct depriving them of rights, privileges, or immunities secured by the United States Constitution or federal law. 42 U.S.C. § 1983. Second, plaintiffs must show that this conduct occurred under color of state law. *Id.* The court will begin by analyzing plaintiffs' allegations to determine whether, viewing the allegations in a light most favorable to the plaintiffs, they were deprived of any constitutional rights.

Count I of plaintiffs' complaint alleges that all of the defendants conspired to violate plaintiffs' civil rights. Plaintiffs state that the underlying constitutional violations of that conspiracy are malicious prosecution, harassment, threats to violate the plaintiffs' due process and deprivation of privacy. Complaint, at ¶ 9; Plaintiffs' Response to Motion to Dismiss of Regency Savings Bank, at 1, 4. Therefore, the court will consider whether any or all of plaintiffs' alleged constitutional violations state a claim upon which relief can be granted.

### 1. Malicious Prosecution

■ Defendants argue that plaintiffs have failed to state a cause of action against any of the defendants for conspiracy to commit malicious prosecution. One of the essential elements of a cause of action for malicious prosecution is "the commencement or continuance of an original criminal or civil judicial proceeding by the defendant...." *Joiner v. Benton Community Bank,* 82 Ill.2d 40, 44 Ill.Dec. 260, 263, 411 N.E.2d 229, 232 (1980). A prosecution is commenced by the filing of a complaint, an information or an indictment taken by official action rather than a mere complaint to the proper authorities. 720 I.L.C.S. 5/2–16 (1992); *Mulligan v. Village of Bradley,* 131 Ill.App.3d 513, 86 Ill.Dec. 650, 653, 475 N.E.2d 1029, 1032 (3d Dist.1985).

■ The plaintiffs' complaint does not allege that criminal or judicial proceedings were commenced against them by defendants. In fact, plaintiffs allege that the County of DuPage refused to prosecute plaintiffs because the controversy, if any, between plaintiffs and Regency Savings Bank was civil in nature. Complaint, at ¶ 11. All

that is present here is a mere complaint to the proper authorities which, according to *Mulligan*, is not sufficient to support a cause of action for malicious prosecution. *Mulligan*, 86 Ill.Dec. at 653, 475 N.E.2d at 1032.[2]

Plaintiffs cite the case of *Mahoney v. Kesery*, 976 F.2d 1054 (7th Cir.1992) for the proposition that malicious prosecution can be "a step on the road to a constitutional violation for which redress is available under § 1983." *Id.* at 1062. The plaintiff in *Mahoney*, however, was actually arrested and prosecuted. *Id.* at 1057. Therefore, there was a seizure under the Fourth Amendment and, because the police officer arrested the plaintiff without probable cause, a constitutional violation occurred. *Id.* Thus, *Mahoney* is distinguishable from the instant case in which plaintiffs were neither arrested nor prosecuted. Furthermore, the Seventh Circuit made clear in *Mahoney* that malicious prosecution is "not separately actionable under the Constitution" but merely a step toward a constitutional violation. *Id.* at 1062.

Accordingly, the court concludes that plaintiffs have not stated a claim for malicious prosecution as a basis for their § 1983 cause of action.

## 2. *Harassment*

■ Defendants argue that plaintiffs' allegation that defendants conspired to harass them does not state a cause of action under the United States Constitution or 42 U.S.C. § 1983. Defendants argue, and the court agrees, that police harassment, without more, cannot form a basis for a § 1983 cause of action. *Bacon v. Patera*, 772 F.2d 259, 264–65 (6th Cir.1985) (no right in the Constitution to be free from police harassment and intimidation). In *Bacon*, the court rejected plaintiff's claim under the Fifth and Sixth Amendments that he had a constitutional right to be free from police harassment and intimidation. *Id.* The court reasoned that although the

Fifth and Sixth amendments provide a number of protections for the accused (including the right to remain silent, the right to counsel, the right to a speedy trial and the right against double jeopardy, which could be viewed as having one overall purpose of protecting the accused from intimidation by police authorities), these specifically enumerated rights are generally adequate to assure fair treatment for defendants. *Id.* Therefore, in the absence of an accompanying constitutional injury as a result of the intimidation, harassment by itself is an insufficient basis for a § 1983 claim. *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). *See also Goulding v. Feinglass*, 811 F.2d 1099 (7th Cir.), *cert. denied*, 482 U.S. 929, 107 S.Ct. 3215, 96 L.Ed.2d 701 (1987); *Goldberg v. Weil*, 707 F.Supp. 357 (N.D.Ill.1989).

In *Paul v. Davis*, police chiefs distributed a flyer to local merchants to warn them of possible shoplifters in the area. *Paul*, 424 U.S. at 695, 96 S.Ct. at 1158. The flyer contained photos and names of possible shoplifters, one of which was the respondent. *Id.* However, after the flyer had been circulated, the charge against the respondent had been dismissed. *Id.* at 696, 96 S.Ct. at 1158. The respondent's employer had learned of his inclusion in the flyer and although he was not fired, he was told he "had best not find himself in a similar situation" in the future. *Id.* Respondent sued the police chiefs who distributed the flyers, alleging that he had been deprived of liberty for injury to his reputation under the Fourteenth Amendment without due process of law, and that his right to privacy had been violated under the First, Fourth, Fifth, Ninth, and Fourteenth Amendments. *Id.* The Supreme Court upheld the district court's dismissal of respondent's case, ruling that the respondent may have had a claim for defamation in the state courts, but not a federal due process claim.

---

2. Regency, in its reply brief, points out that the plaintiffs raised the same allegations of conspiracy to commit malicious prosecution in a counterclaim filed in the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois in Case No. 91 L 2177 entitled *Regency Savings Bank v. Donald H. Arnold and Pamela S. Arnold*. Regency argues that because in that case the court dismissed the counterclaim with prejudice, plaintiffs are barred by *res judicata* from raising it here. The court need not reach the issue of *res judicata* since plaintiffs' complaint does not allege the commencement of any judicial proceedings although obviously Regency has pursued a civil action against them.

*Id.* at 698, 96 S.Ct. at 1159. The Court stated:

> [H]is interest in reputation is simply one of a number which the State may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions. Any harm or injury to that interest, even where as here inflicted by an officer of the State, does not result in a deprivation of "liberty" or "property" recognized by state or federal law, nor has it worked any change of respondent's status as theretofore recognized under the ·State's laws. For these reasons we hold that the interest in reputation in this case is neither "liberty" nor "property" guaranteed against state deprivation without due process of law.

*Id.* at 712, 96 S.Ct. at 1166.

■ In a more recent and perhaps more analogous case, *Goldberg v. Weil,* 707 F.Supp. 357 (N.D.Ill.1989), the court held that conduct similar to that alleged here did not amount to a violation of the Fourteenth Amendment. In *Goldberg,* the plaintiff alleged that police officers harassed her by banging on her front and back doors, jumping over her locked fence into her back yard, shouting into her home in an attempt to gain access, and threatening to return with a warrant for her arrest. *Id.* at 358. The police officers then left and called relatives and one friend of the plaintiff in an effort to somehow help them gain access to plaintiff's home. *Id.* at 359. The police officers allegedly made inaccurate statements to the friend and relatives, including telling them that they had been "having trouble" with the plaintiff for days. *Id.* The court held that the police officers and the Village could not be held liable because it is not improper for police to question a person without formal charge or warrant. *Id.* The court also found it is not improper to make a statement to one person that another person would be arrested. *Id.* at 360. In sum, inconvenience, aggravation and alleged injuries to reputation caused by police officers do not amount to violations of the Fourteenth Amendment because such allegations do not invoke protected life, liberty or property interests. *Id.* at 361.

Similarly, the conduct or alleged "harassment" in the instant case does not invoke protected life, liberty or property interests. Plaintiffs' allegation that the police officers told plaintiffs' children that plaintiffs would be prosecuted if they did not pay their alleged debt and let it be known at plaintiffs' places of employment that plaintiffs purportedly owed $18,000 to Regency, although rude and obnoxious, does not implicate any constitutional right.

### 3. *Threats to Violate Due Process*

■ Plaintiffs next allege that defendants violated their civil rights by issuing "threats to violate due process." There is no civil rights cause of action under the Constitution for "threats to violate due process rights." To be actionable, plaintiffs' due process rights must have actually been violated. In support of their claim of a threatened due process violation, plaintiffs cite *Lusby v. T.G. & Y. Stores, Inc.,* 749 F.2d 1423 (10th Cir. 1984), and *Horne v. Farrell,* 560 F.Supp. 219 (M.D.Pa.1983).

However, as defendants argue, both of these cases involve actual violations of due process, not mere threats. In *Lusby,* a party suspected of shoplifting was physically struck by a police officer acting as a security guard for a store, and the plaintiffs were placed in jail and subjected to strip searches by the police. *Lusby,* 749 F.2d at 1428. Further, the defendants bargained with the plaintiffs for a release of civil liability before they would agree to drop the criminal charges filed against them. *Id.* at 1431. Thus, the defendants in *Lusby* actually caused a deprivation of the plaintiffs' civil rights by arresting the plaintiffs and refusing to release them even after it was discovered that they were not guilty of shoplifting. In *Horne,* the due process rights of the plaintiff were allegedly violated when a constable, acting under color of state law, allegedly threatened and coerced the plaintiff into signing an agreement admitting liability for a debt and agreeing to pay a debt in full before the plaintiff's hearing. *Horne,* 560 F.Supp. at 221. Thus, in *Horne,* the forcing of the plaintiff to sign the agreement created the deprivation of the plaintiff's due process rights.

In contrast to *Lusby* and *Horne*, the plaintiffs in the instant case allege only that the Naperville Police Department, through its officers, and the officers individually threatened to bring criminal charges against the plaintiffs. Plaintiffs do not allege that a criminal action was ever brought against the plaintiffs, or that they were coerced by threats to waive any of their rights as to Regency or the other defendants. Therefore, plaintiffs have failed to allege a violation of their due process rights.

### 4. *Deprivation of Privacy*

Finally, plaintiffs assert that they have been deprived of their constitutional right to privacy. Plaintiffs do not indicate the basis for their right to privacy claim. They allege only that defendants denied them "the right of privacy to protect their individual interests in avoiding disclosure of personal matters to their children." Complaint, at ¶ 12. Because plaintiffs have been less than clear as to the foundation for their right to privacy claim, the court will address several possibilities.

■ To the extent plaintiffs allege that they have a right to determine for themselves when, how, or to what extent information about them is to be communicated to others based on the First Amendment, they do not state a claim. The First Amendment "stands for the contrary proposition, that people have a right to determine for themselves what they say; people do not have a right to determine what others say." *Goldberg v. Weil,* 707 F.Supp. 357, 360–61 (N.D.Ill.1989).

■ To the extent plaintiffs allege that the police officers intruded on the realm of the family in violation of either First or Fourteenth Amendment rights, or both, the court recognizes that the constitution does protect "a private realm of family life which the state cannot enter." *Alber v. Illinois Department of Mental Health and Developmental Disabilities,* 786 F.Supp. 1340, 1366 (N.D.Ill. 1992). "Parents and children living together in traditionally recognized legal forms have historically found shelter against various forms of state intrusion." *Id.* Usually the right is described as one of the fundamental

liberties protected by the substantive due process clause. *Id.* However, the associational freedoms of the First Amendment are also thought to protect the integrity of families against the state. *Id.* Nonetheless, the court finds that the conduct alleged here does not implicate a fundamental right or rise to the level of a constitutional harm. *See, e.g., Alber,* 786 F.Supp. at 1346 (plaintiff alleged that defendants had violated their constitutional rights, among others, by twice removing two developmentally disabled adults, whom plaintiffs had adopted, from their home without their consent and confining them to institutions that provided legally inadequate care); *Pierce v. Society of Sisters,* 268 U.S. 510, 534–35, 543, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925) (sustaining the parent's authority to provide religion with secular schooling and the child's right to receive it). Furthermore, plaintiffs have alleged no harm to their children from having been exposed to the comments of Truemper and Bisch. Rather the plaintiffs appear to be claiming harm to their reputation as parents in the eyes of their children.

Like plaintiffs' harassment claim, to the extent plaintiffs' allegation of deprivation of privacy simply amounts to an alleged injury to reputation, it is outside the scope of constitutional protection absent some tangible injury. *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). There is no actionable liberty or property interest in this case, nor is there a fundamental right at stake which would invoke the right to privacy. Therefore, plaintiffs have not stated a claim for a violation of their right to privacy.

In support of their right to privacy allegation, plaintiffs cite *Soldal v. Cook County,* — U.S. ——, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992). In *Soldal,* the plaintiff's mobile home was seized and moved by the Cook County Sheriff's Department, even though a proper eviction order had not been obtained from the courts. Thus, the plaintiff's Fourth Amendment right to be free from unreasonable search and seizure was violated in *Soldal* because the Sheriff's deputies removed the plaintiff's mobile home despite their knowledge that an order of eviction had not

been entered. As defendants note, *Soldal* is inapplicable. In fact, the *Soldal* court specifically found that there need not be a privacy interest at stake in order to state a claim under the Fourth Amendment because the Fourth Amendment unmistakably protects property as well as privacy.

█ Viewing the facts in the light most favorable to plaintiffs and having found no injury to plaintiffs' constitutional rights, there can be no claim that the defendants conspired to violate plaintiffs' civil rights under § 1983. The Seventh Circuit has made clear that § 1983 does not punish conspiracy alone. *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir.1982). Rather, an actual denial of a civil right is necessary before a cause of action arises. *Id.* Furthermore, a conspiracy requires factual allegations showing a meeting of the minds. *Id.* Conclusory allegations will not suffice. The court need not address whether plaintiffs' allegations are conclusory because as the foregoing discussion has indicated, plaintiffs have failed to allege the violation of any cognizable constitutional right. Therefore, plaintiffs have not stated a claim under § 1983 for conspiracy.

In addition, the court need not determine whether plaintiffs have sufficiently alleged that defendants acted under color of state law.

For the foregoing reasons, the court dismisses Count I of plaintiffs' complaint.

## B. *COUNT II: 15 U.S.C. § 1692*

In Count II, plaintiffs allege that Regency violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") by using tactics that were unfair and harmful to the plaintiffs to collect a debt. Complaint, at ¶ 20. Specifically, plaintiffs claim that Regency violated the FDCPA by using fear, coercion, threats and harassment by the police to collect an alleged debt. *Id.*

The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses." 15 U.S.C. § 1692. Through its various provisions, the FDCPA prohibits, among other things, certain types of communication in connection with debt collection, 15 U.S.C. § 1692c, and harassment or abuse of persons in connection with the collection of a debt. 15 U.S.C. § 1692d.

█ Regency argues that plaintiffs fail to state a claim that Regency violated the FDCPA because that statute does not apply to Regency or the type of situation presented here. The definitional section of the FDCPA at 15 U.S.C. § 1692a supports defendant's argument. First, the term "creditor" means "any person who offers or extends credit creating a debt or to whom a debt is owed...." 15 U.S.C. § 1692a(4). Clearly, Regency is not a "creditor" as that term is defined in the FDCPA because in the instant case, the alleged debt arose by a mistake at Regency Savings Bank in over-crediting plaintiffs' account. Regency did not offer or extend credit to plaintiffs. Second, the term "debt" means "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Plaintiffs do not allege that the "debt" arose out of any transaction. In fact, plaintiffs do not address the source of the alleged "debt" except to allege that Regency filed a criminal charge against plaintiffs "that the plaintiffs had passed a 'bad check.'" Complaint, at ¶ 9(a). Regency states that it contacted the Naperville Police Department to investigate the refusal of the plaintiffs to return an amount of $18,000 which Regency credited to plaintiffs' checking account in error. Regency submits that this is not a "debt" as defined in the FDCPA. Third, the term "debt collector" means "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another .... [T]he term includes any creditor who, in the

process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts...." 15 U.S.C. § 1692a(6). Plaintiff alleges that because Regency used the City of Naperville and its police officers to collect an alleged debt, it "used a third person to collect a debt" and therefore, Regency is a debt collector under 15 U.S.C. § 1692. Complaint, at ¶¶ 18 and 19. Plaintiff apparently ignores the plain language of the statute. The plaintiffs have not alleged that the police are in a business the principal purpose of which is the collection of debts, nor that they regularly collect debts. Nor did Regency contract with the Naperville Police Department or use their name in order to collect a debt. Rather Regency contacted the Naperville Police Department to investigate what Regency suspected to be a criminal matter.

Because plaintiffs have not alleged facts placing the defendants within the scope of the definitions of the FDCPA, plaintiffs cannot state a claim under 15 U.S.C. § 1692. In *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163 (3d Cir.1987), where the defendant demanded monetary compensation from the plaintiff in settlement of an asserted legal claim (that plaintiff illegally received microwave television signals), the court held that the complaint failed to state a claim under the FDCPA because plaintiffs alleged no offer or extension of credit. *Id.* at 1169. Similarly, in the instant case, plaintiffs' complaint fails to properly allege facts that the alleged "debt" and the parties to this action, much less their conduct, are covered by the FDCPA. Therefore, the court finds that the complaint fails to state a claim under the FDCPA. Count II of the complaint is dismissed with prejudice pursuant to FED.R. OF CIV.P. 12(b)(6) because plaintiffs have failed to state a claim upon which relief may be granted.

### III. *CONCLUSION*

For the reasons set forth above, the court grants defendants' motion to dismiss plaintiffs' complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).