[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 01-11376
_____

D.C. Docket No. CV100-132

JANET G. PATTON,
on behalf of herself and
all others similarly situated

Plaintiff-Appellant,

versus

TRIAD GUARANTY INSURANCE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(January 2, 2002)**

Before ANDERSON, Chief Judge, EDMONDSON and BARKETT, Circuit
Judges.

BARKETT, Circuit Judge:

Janet G. Patton ("Patton") appeals an adverse summary judgment in favor of

Triad Guaranty Insurance Corporation ("Triad") on Patton's claim that Triad

violated the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 et seq., by giving illegal kickbacks to Premier Lending Corporation ("Premier"), from whom Patton obtained a home mortgage loan. Specifically, Patton claimed that she was wrongfully required to obtain mortgage insurance from Triad as a result of the illegal kickback scheme between Premier and Triad. The trial court granted summary judgment to Triad, finding that § 1012 of the McCarran-Ferguson Act, 15 U.S.C. § 1011-1015, barred Patton's RESPA claim against Triad. We reverse.

## BACKGROUND

Patton obtained a home mortgage loan from Premier. Because Patton was financing more than 80% of the home's value, Premier required her to purchase mortgage insurance to protect it in the event of her default. Patton's loan agreement with Premier required her to obtain mortgage insurance from a company of Premier's choosing. Premier selected Triad and Patton accordingly purchased mortgage insurance from Triad.

Patton commenced a class action against Triad on behalf of herself and others who obtained mortgage insurance from Triad under like circumstances, alleging that Triad gave illegal kickbacks to Premier in exchange for Premier's referral to Triad of its mortgage insurance business. The savings generated for Triad by this scheme, Patton alleged, were never passed on to Triad's consumers, in violation of § 207(a) of RESPA, which provides, *inter alia*, that,

> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding . . . [in order] that business incident to or part of a real estate

2

settlement service involving a federally related mortgage loan shall be referred to any person.

Without addressing the merits of Patton's RESPA claim, the district court determined that the claim was barred by § 1012 of the McCarran-Ferguson Act, which provides:

> No Act of Congress shall be construed to invalidate, impair, or supercede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee upon such business, unless such Act specifically relates to the business of insurance.

Relying principally on Federal Trade Commission v. National Casualty Co., 357 U.S. 560 (1958) and Humana v. Forsyth, 525 U.S. 299 (1999), the district court held that allowing Patton's RESPA claim to proceed would "impair, invalidate, or supercede" the provisions of Georgia's detailed state insurance code, O.G.C.A. § 33-1-1 et seq. (the "Georgia Insurance Code"). Accordingly, the court granted Triad's motion for Summary Judgment.

## STANDARD OF REVIEW

We review the trial court's grant or denial of a motion for summary judgment *de novo*, viewing the record and drawing all reasonable inferences in the light most favorable to the non-moving party. See Arrington v. Cobb County, 139 F.3d 865, 871 (11th Cir. 1998).

## DISCUSSION

### A. RESPA

Congress passed the Real Estate Settlement Procedures Act in 1974 to protect home buyers "from unnecessarily high settlement charges caused by certain

abusive practices."[1]  12 U.S.C. § 2601(a).  Specifically, Congress intended to eliminate "kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services."  Id. § 2601(b)(2); see generally, Culpepper v. Inland Mortgage Corp., 132 F.3d 692, 694 (11th Cir. 1998).  The Senate Report for RESPA explains that RESPA "is intended to prohibit all kickback and referral fee arrangements whereby any payment is made or 'thing of value' furnished for the referral of real estate settlement business."  S.Rep. 93-866, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S. C.C.A.N 6551.  As noted above, § 207(a) of RESPA specifically provides that "[n]o person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding . . . [in order] that business incident to or part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."

Patton argues that the kickback scheme allegedly maintained by Premier and Triad violated this section of RESPA.  Triad denies that it engaged in any kickback scheme violative of RESPA, but argues that even if it did, § 1012 of the McCarran-Ferguson Act bars Patton's RESPA claim, leaving Patton with recourse only to the administrative remedies provided by the Georgia Insurance Code.  Patton responds that § 1012 of the McCarran-Ferguson Act does not apply.

---

[1]"Settlement," in this context, refers to the process of closing a federally related mortgage loan, see 24 C.F.R. § 3500.2(b), and "settlement service" is "any service provided in connection with a prospective or actual settlement."  Id.

4

**B.** The McCarran-Ferguson Act

In United States v. South-Eastern Underwriters Assn., 322 U.S. 533 (1944), the Supreme Court held that regulation of interstate insurance business fell within the purview of Congress' commerce power.[2]  Nonetheless, because Congress intended the states to continue to regulate and tax the business of insurance, it sought to ensure that if it chose not to address insurance in a given statute, its silence would not be construed to impose any barrier to regulation or taxation of insurance by the states.  In so doing, Congress intended to forfend "the possibility of inadvertent federal intrusion [into state regulation of insurance]–say, through enactment of a federal statute that describes an affected activity in broad, general terms, of which the insurance business happens to constitute one part."  Barnett Bank of Marion County v. Nelson, 517 U.S. 25, 41 (1996).  To prevent such inadvertent federal regulation of the insurance industry, Congress enacted the McCarran-Ferguson Act, explaining that:

> Congress hereby declares that the continued regulation and taxation by the several states of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several states.

15 U.S.C. § 1011.  In furtherance of this provision, § 1012 of the Act states that:

---

[2] Prior to South-Eastern Underwriters, the Court had consistently held that the business of insurance was not "commerce."  See, e.g., Paul v. Virginia, 8 Wall. 168, 183, 19 L.Ed. 357 (1868) ("Issuing a policy of insurance is not a transaction of commerce."); see also South-Eastern, 322 U.S., at 544 n.18 (collecting cases relying on the Paul generalization).  Therefore, the court held, such business was generally immune to federal regulation.  See, e.g., St. Paul Fire & Marine Ins. Co. v. Barry, 438 U.S. 531, 539 (1978) (prior to South-Eastern, "the States enjoyed a virtually exclusive domain over the insurance industry.").

5

> No Act of Congress shall be construed to invalidate, impair, or supercede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee upon such business, *unless such Act specifically relates to the business of insurance*.

15 U.S.C. § 1012 (emphasis supplied).

In interpreting the McCarran-Ferguson Act, the Supreme Court has recognized that the language of §§ 1011 and 1012 "indicates that the Act does not seek to insulate state insurance regulation from the reach of *all* federal law," but only from *inadvertent* federal regulation." Barnett Bank, 517 U.S. at 40. Accordingly, the McCarran-Ferguson Act "d[oes] not require avoiding federal pre-emption by future federal statutes that indicate, through their 'specific relat[ion]' to insurance, that Congress had focused upon the insurance industry." Id. The Supreme Court has explained that, in enacting the McCarran-Ferguson Act, Congress did not intend to cede the entire field of insurance regulation to the states, stating that "when Congress enacts a law specifically relating to the business of insurance that law controls." Humana v. Forsyth, 525 U.S. 299, 306 (1999).

The Court has also made clear that even if a federal statute does not "specifically relate to the business of insurance," § 1012 provides that it will still apply *unless* it "invalidates, impairs, or supercedes" state insurance regulation. See Humana, 525 U.S. at 307. Because we hold that RESPA "specifically relates to the business of insurance," however, we need not consider whether its application here would "invalidate, impair, or supersede" the Georgia Insurance Code.

6

**C.** RESPA Specifically Relates to the Business of Insurance

As noted above, the McCarran-Ferguson bar does not apply where Congress explicitly reveals its intent to regulate the business of insurance. In Barnett Bank, *supra*, the Supreme Court explained that an act "specifically relates to the business of insurance" where "[t]he language of the Federal Statute . . . is not general [but] refers specifically to insurance." Barnett Bank, 517 U.S. at 41. This does not mean, however, that the statute must relate *only* to insurance. As the Court explained:

> [A] statute may specifically relate to more than one thing. Just as an ordinance forbidding dogs in city parks specifically relates to dogs and to parks, so a statute permitting banks to sell insurance can specifically relate to banks and to insurance. Neither the McCarran-Ferguson Act's language, nor its purpose, requires the Federal Statute to relate *predominantly* to insurance. To the contrary, specific detailed references to the insurance industry in proposed legislation normally will achieve the McCarran-Ferguson Act's objectives . . . .

Id. at 41 (emphasis in original).

While RESPA does not relate predominantly to insurance, it does explicitly refer to mortgage insurance, defining the term "settlement services" to include:

> *[A]ny service provided in connection with a real estate settlement* including, but not limited to, the following: title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, the preparation of documents, property surveys, the rendering of credit reports or appraisals, pest and fungus inspections, services rendered by a real estate agent or broker, the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the *underwriting* and funding of loans), and the handling of the processing, and closing or settlement;

7

12 U.S.C. § 2602(3) (emphases supplied).  In the context of the provision of services in connection with a real estate settlement, the most plausible meaning of the term "underwriting . . . of loans" is mortgage insurance.  This is the leading definition in Black's Law Dictionary, which defines "underwriting" principally as, "The act of assuming a risk by insuring it; the insurance of life or property." Black's Law Dictionary (7th ed. 1999).  The fact that "Settlement Services" is defined to include "*any* service provided in connection with a real estate settlement" (emphasis supplied), without restriction, bolsters this view.  Thus, we are persuaded that RESPA is a Congressional Act that "specifically relates" to mortgage insurance.

We note the significance, in this regard, of Congress' 1992 amendment to RESPA.  Prior to 1992, RESPA's definition of "Settlement Services," otherwise identical to the version printed above, ended with the phrase "services rendered by a real estate agent or broker."  In United States v. Graham Mort. Corp., 740 F.2d 414, 423 (6th Cir. 1984), the Sixth Circuit held that the making of a mortgage loan was not included in this pre-1992 definition.  House Report No. 102-760 indicates that the definition of "Settlement Services" was amended in 1992 specifically in response to Graham Mortgage, to add the phrase "the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the *underwriting* and funding of loans)."  See P.L. 102-550, §908(a) (emphasis supplied).  The Report states that, "The Committee bill amends the Real Estate Settlement Procedures Act (RESPA) of 1974 (P.L. 93-533) to make

8

clear that for purposes of RESPA, a settlement service includes the origination of a loan. The bill would also make clear that RESPA applies to second mortgages and mortgage refinancings." H.R. Rep. No. 102-760, at 158 (1992), reprinted in 1992 U.S.C.C.A.N. 3281, 3438. The House committee felt this change was necessary to preserve RESPA's effectiveness as a consumer protection statute. Id. Congress' broadening of the definition of "Settlement Services" in response to Graham Mortgage's holding that the existing definition did not include the making of mortgage loans–specifically to include the taking of loan applications, processing of loans, and, most importantly, *underwriting* of loans–further persuades us that "Settlement Services" now includes mortgage insurance.

We also note that RESPA explicitly authorizes enforcement of all violations by state Insurance Commissioners:

> The Secretary, the Attorney General of any state, *or* the Insurance Commissioner of any state may bring an action to enjoin violations of this section.

12 U.S.C. § 2607(d)(4) (emphasis supplied). The enforcement authority of state Insurance Commissioners obviously extends to insurers, and the Commissioners' authority to enforce RESPA is a persuasive indication that Congress contemplated that RESPA's provisions apply to insurers generally.

In addition, Congress endeavored, through RESPA, to reduce the amount of money that prospective homebuyers would be required to place in escrow during the real estate settlement process. See 12 U.S.C. § 2601(b)(3).[3] These escrow

---

[3]Consistent with this objective, § 2609(a) of RESPA provides that:

9

accounts have traditionally included money for mortgage insurance. Congress'

express regulation of a mechanism that traditionally involves mortgage insurance

further indicates RESPA's specific relation to mortgage insurance.

Moreover, the Department of Housing and Urban Development (HUD)[4] has

consistently treated RESPA as applying to mortgage insurance, and has explicitly

defined the term "settlement service" to include "the provision of services

involving mortgage insurance." 24 C.F.R. § 3500.2. As early as 1975, HUD's real

estate "settlement statement," developed pursuant to 12 U.S.C. § 2603, included

lines specifically designated for itemization of mortgage insurance premiums, and

its "special information booklet for borrowers," developed pursuant to 12 U.S.C. §

2604, included a detailed discussion of mortgage insurance as a part of the

settlement process.[5] Thus, for more than twenty-five years, and virtually since the

enactment of RESPA, HUD has exercised its regulatory authority based upon the

understanding that RESPA applies to settlement-related mortgage insurance.

---

A lender, in connection with a federally related mortgage loan, may not require the borrower or prospective borrower–

(1) to deposit in any escrow account which may be established in connection with such loan for the purpose of assuring payment of taxes, *insurance premiums*, or other charges with respect to the property, in connection with the settlement, an aggregate sum (for such purpose) in excess of a sum that will be sufficient to pay such taxes, insurance premiums and other charges . . . .

12 U.S.C. § 2609(a) (emphasis supplied).

[4]The Department of Housing and Urban Development (HUD) is the federal agency with statutory authority to interpret and apply RESPA through the promulgation of implementing regulations. See 12 U.S.C. § 2617.

[5]See 40 Fed. Reg. 22451, 22459 and 22460 (information booklet); 22453-56 (settlement statement) (May 22, 1975).

This statutory interpretation by HUD, which is charged with congressional authority to interpret RESPA and to administer it through the promulgation of implementing regulations, lends further support to our conclusion that RESPA "specifically relates" to mortgage insurance. HUD's special expertise in the area of real estate settlement and the traditional deference we give to such federal agencies underscores our conclusion that RESPA "specifically relates" to mortgage insurance. See Chevron v. Natural Resources Defense Counsel, 467 U.S. 837, 844 (1984); see also, e.g., Jaramillo v. Immigration and Naturalization Service, 1 F.3d 1149, 1152 (11th Cir. 1993) ("Supreme Court precedent . . . commands us to defer to the interpretation of a statute by the agency charged with administering it, so long as the agency's interpretation is reasonable and is not inconsistent with the language of the statute or congressional intent.").

Thus, we disagree with the district court's conclusion that RESPA does not "specifically relate to the business of insurance," including mortgage insurance. Because we so find, and because the McCarran-Ferguson Act only protects against *inadvertent* federal regulation of insurance, we need not consider whether allowing Patton's RESPA claim to proceed here would "invalidate, impair, or supercede" the provisions of the Georgia Insurance Code.

## CONCLUSION

For the foregoing reasons, the trial court's grant of summary judgment in favor of Triad is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this opinion.

11