[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-12461
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 7, 2010
JOHN LEY
CLERK

D.C. Docket No. 8:09-cv-00497-JDW-TGW

BARRY OPPENHEIM,

            Plaintiff - Appellee,

versus

I.C. SYSTEM, INC.,

            Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 7, 2010)

Before CARNES, HULL and ANDERSON, Circuit Judges.

PER CURIAM:

        Defendant-Appellant I.C. System, Inc. ("I.C. System") appeals the district

court's denial of its motion for summary judgment as to Plaintiff-Appellee Barry

Oppenheim's ("Oppenheim") claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq., and the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. §§ 559.72 et seq. After review, we affirm.

## I. BACKGROUND

In May 2008, Plaintiff Barry Oppenheim sold his laptop computer to a buyer through Craigslist, an Internet website. Oppenheim instructed the laptop buyer to make payment for the computer by depositing funds into Oppenheim's account with PayPal. PayPal is an e-commerce business that facilitates money transfers through the Internet. PayPal typically acts as an intermediary that accepts funds from a buyer and deposits these funds into the account of a seller, subtracting any applicable service charges.

Oppenheim had set up his PayPal account several years prior to this laptop transaction, and he agreed to abide by the PayPal User Agreement. The User Agreement allows PayPal to "reverse" a transaction if, among other reasons, a payment is invalidated by the sender's bank or if the sender did not have authorization to transfer the funds.[1] The PayPal account user, here Oppenheim,

---

[1] See PayPal User Agreement ¶ 15.as:

"Reversal" means PayPal reverses a payment you received because (a) it is invalidated by the sender's bank or credit card company, (b) it was send [sic] to you in error by PayPal, its parent, or any direct or indirect PayPal subsidiary, (c) the sender of the payment did not have authorization to send the payment (for example:

bears the risk of such reversals and is liable for the full amount of the invalidated

payment, plus applicable fees.[2]

The laptop buyer agreed to make payment into Oppenheim's PayPal

account.  PayPal notified Oppenheim once the funds were deposited, and the

laptop exchange took place.  Later, Oppenheim transferred these funds from his

PayPal account to his personal bank account.

Weeks after the laptop transaction occurred, PayPal notified Oppenheim

that the laptop buyer's payment was fraudulent[3] and that PayPal would therefore

---

the sender used a credit card that did not belong to the sender), (d) you received the
payment for activities that violated this Agreement, the PayPal Acceptable Use
Policy, or any other PayPal agreement, or (e) PayPal decided a Claim against you.

[2]See id. ¶ 4.5:

When you receive a payment, you are liable to PayPal for the full amount of the
payment plus any Fees if the payment is later invalidated for any reason.  This means
that, in addition to any other liability, you will be responsible for the amount of the
payment, plus the applicable Fees . . . if you lose a Claim or a Chargeback, or if there
is a Reversal of the payment.

You agree to allow PayPal to recover any amounts due to PayPal by debiting your
Balance.  If there are insufficient funds in your Balance to cover your liability, you
agree to reimburse PayPal through other means.

[3]See id. ¶ 9.1:

Restricted Activities.  In connection with your use of our website, your Account, or
the Services, or in the course of your interactions with PayPal, a User or a third party,
you will not . . . .
(g) Send or receive what we reasonably believe to be potentially fraudulent funds.

3

exercise its reversal rights under the User Agreement.  Nevertheless, Oppenheim refused to repay the funds to PayPal.

PayPal then retained the services of Defendant I.C. System to recover the laptop money from Oppenheim.  Over a period of three months, I.C. System made a series of telephone calls to Oppenheim in an attempt to collect the funds.  According to Oppenheim, I.C. System's calls constituted a form of harassment and contained false and misleading representations.  Oppenheim brought suit against I.C. System, alleging (1) a violation of the FDCPA in Count 1, (2) a violation of the FCCPA in Count 2, and (3) a common law invasion of privacy by intrusion in Count 3.

Prior to the commencement of the trial, I.C. System moved for summary judgment on all three counts.  I.C. System argued that Oppenheim's payment obligation to PayPal did not constitute a "debt" under the FDCPA or the FCCPA and that Oppenheim had not pled sufficient facts to maintain the tort claim of invasion of privacy.  In a February 18, 2010 order, the district court granted I.C. System's motion for summary judgment on Count 3 but denied its motion for summary judgment with respect to Count 1 (the FDCPA claim) and Count 2 (the FCCPA claim).

The case proceeded to trial and a jury ultimately awarded $1,000 in

statutory damages to Oppenheim. Additionally, the district court awarded Oppenheim $20,000 in attorney's fees and $986.21 in costs. I.C. System timely appealed the district court's denial of its summary judgment motion with respect to the FDCPA and FCCPA claims.

## II. DISCUSSION

### A. Standard of Review

We review <u>de novo</u> the district court's denial of I.C. System's motion for summary judgment. <u>LeBlanc v. Unifund CCR Partners</u>, 601 F.3d 1185, 1189 (11th Cir. 2010). Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The Court reviews the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. <u>Patton v. Triad Guar. Ins. Corp.</u>, 277 F.3d 1294, 1296 (11th Cir. 2002).

### B. Fair Debt Collection Practices Act

In 1977 Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from

using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To recover under both the FDCPA and the FCCPA (a Florida state analogue to the federal FDCPA), a plaintiff must make a threshold showing that the money being collected qualifies as a "debt." The FDCPA and the FCCPA identically define "debt" as:

> any obligation or alleged obligation <u>of a consumer</u> to pay money <u>arising out of a transaction</u> <u>in which the money</u>, property, insurance, or services which are the subject of the transaction <u>are primarily for personal, family, or household purposes</u>, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5) (emphasis added); Fla. Stat. § 559.55(1) (same). Accordingly, the FDCPA and FCCPA apply only to payment obligations of a (1) <u>consumer</u> arising out of a (2) <u>transaction</u> in which the money, property, insurance, or services at issue are (3) <u>primarily for personal, family, or household purposes</u>. The statute thus makes clear that the mere obligation to pay does not constitute a "debt" under the FCPA.[4]

---

[4]<u>See, e.g.</u>, <u>Hawthorne v. Mac Adjustment Inc.</u>, 140 F.3d 1367, 1371 (11th Cir. 1998) (holding that obligation to pay damages arising from tort was not a "transaction" under the FDCPA); <u>Beggs v. Rossi</u>, 145 F.3d 511, 512 (2d Cir. 1998) (holding that personal property taxes were not "debt" because they did not arise from a transaction); <u>Mabe v. G. C. Servs. Ltd. Partnership</u>, 32 F.3d 86, 88 (4th Cir. 1994) (holding that child support payments were not "debt" because they were "not incurred to receive consumer goods or services"); <u>Zimmerman v. HBO Affiliate Group</u>, 834 F.2d 1163, 1168 (3d Cir. 1987) (holding that plaintiff who illegally stole television signals could not assert FDCPA claim due to lack of contractual relationship).

Whether the district court erred in classifying Oppenheim's payment obligation to PayPal as a "debt," governed by the provisions of the FDCPA and FCCPA, is the only issue raised on appeal. We analyze each of the three elements separately to determine whether Oppenheim's payment obligation constituted a "debt" under the FDCPA.

1.    *Consumer*

I.C. System contends that the money at issue here was proceeds from a commercial sale in which Oppenheim was the seller. Since the FDCPA concerns the obligations of a consumer,[5] not a seller, I.C. System argues that the FDCPA cannot apply to Oppenheim's payment obligations to PayPal.

However, I.C. System conflates two connected, but separate transactions. The first transaction concerned the laptop sale between Oppenheim, as seller, and the fraudulent Craigslist purchaser, as buyer. The second transaction—and the relevant transaction for purposes of this action—concerned the services provided by PayPal to Oppenheim, pursuant to the terms delineated in the User Agreement. In this second transaction, as purchaser of PayPal's services, Oppenheim embodies the role of "consumer." The mere fact that he consumes PayPal's services in order

---

[5]The FDCPA defines a consumer as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).

to facilitate a separate sale does not thereby negate his consumer status with respect to PayPal.

2. *Transaction*

This Court previously has recognized the broad scope of "debt" in the FDCPA, agreeing with the Seventh Circuit that "'[a]s long as the transaction creates an obligation to pay, a debt is created.'" Brown v. Budget Rent-A-Car Sys. Inc., 119 F.3d 922, 924 (11th Cir. 1997) (quoting Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1325 (7th Cir. 1997)) (holding that "debt" in FDCPA does not require an extension of credit). We have also stated that, "at a minimum, a 'transaction' under the FDCPA must involve some kind of business dealing or other consensual obligation." Hawthorne v. Mac Adjustment Inc., 140 F.3d 1367, 1371 (11th Cir. 1998).

I.C. System contends that PayPal provided no service to Oppenheim for which he refused to pay, and that Oppenheim's obligation to return the fraudulent funds to PayPal existed regardless of any contractual relationship with I.C. System. We take I.C. System to mean, therefore, that Oppenheim's failure to reimburse PayPal was not a "transaction" and thus does not fall within the ambit of the FDCPA. We disagree.

In support of its contentions, I.C. System cites Arnold v. Truemper, 833 F.

Supp. 678 (N.D. Ill. 1993). Arnold involved a bank that accidentally allotted a $20,000 credit to the plaintiffs' bank account when the plaintiffs had deposited only $2,000. Id. at 680. When the bank requested a return of the erroneously credited money, plaintiffs refused and ultimately filed suit alleging that the bank's collection attempts violated the FDCPA. Id. at 680-81. The district court, however, ruled that the complaint failed to state a claim because the improper credit did not arise out of any transaction and thus did not constitute a "debt" under the FDCPA. Id. at 685-86. See also Orenbach v. Leopold, Gross & Sommers, P.C., 586 F. Supp. 2d 105, 108 (E.D.N.Y. 2008) (obligation to refund erroneously paid salary, due to accounting error, did not arise from a consumer transaction and therefore not a "debt" under the FDCPA).

In this case, however, the district court correctly distinguished Arnold because Oppenheim's payment obligation did arise from a transaction. The factual scenario here would be more analogous to Arnold had Oppenheim set up a PayPal account and, without Oppenheim having used PayPal's services to transmit any funds, PayPal improperly credited his account. Here, however, Oppenheim had utilized PayPal's services in a transaction and, according to the terms of that transaction, was under a contractual obligation to repay the money. See PayPal User Agreement ¶ 4.5 (stating that, under PayPal's right of reversal, PayPal user is

9

liable for full amount of invalidated payment). Oppenheim's transaction with PayPal did not cease upon the transfer of funds to his account; rather, he remained under a continuing contractual obligation to refund any invalidated payments—an obligation which arose from the transaction itself. By contrast, there is no indication that the plaintiffs in Arnold or Orenbach had a contractual obligation dictating their liability in the event of any overpayment.

Contrary to I.C. System's contention, Arnold and Orenbach do not stand for the proposition that one who improperly receives money does not incur a "debt" subject to the FDCPA. Rather, they stand for the proposition that a consumer's obligation must arise from a "transaction" in order for the FDCPA to apply. In this case, Oppenheim's obligation to PayPal amply meets that test.

3.     *Primarily for Personal, Family, or Household Purposes*

I.C. System also argues that the funds at issue do not satisfy the FDCPA requirement that they be "primarily for personal, family, or household purposes," since the transaction served a commercial purpose. See Reply Br. at 5-7. This issue was not clearly raised in I.C. System's initial brief and is thus waived. See McGinnis v. Ingram Equipment Co., 918 F.2d 1491, 1496 (11th Cir. 1990) ("A party normally waives its right to argue issues not raised in its initial brief."). In any event, we are unpersuaded that the sale of Oppenheim's personal

computer—the funds from which were ultimately transferred to Oppenheim's

personal bank account—violates the "personal, family, or household purposes"

requirement. Oppenheim does not run a business and specifically registered his

PayPal account as a "personal account," which the User Agreement defines as an

account "used for non-business purposes and used primarily for personal, family,

or household purposes." PayPal User Agreement ¶ 15.aj.

## C.    Florida Consumer Collection Practices Act

The FCCPA definition of "debt" is identical to that found in the FDCPA.

Compare Fla. Stat. § 559.55(1) with 15 U.S.C. § 1692a(5). Furthermore, the

FCCPA specifies that, in construing its provisions, "due consideration and great

weight shall be given to the interpretations of the Federal Trade Commission and

the federal courts relating to the federal Fair Debt Collection Practices Act." Fla.

Stat. § 559.77(5). On appeal, I.C. System does not contend that Oppenheim's

FDCPA claim should be treated differently from his FCCPA claim. Since the

district court did not err in denying I.C. System summary judgment on

Oppenheim's FDCPA claim, the court also correctly denied I.C. System summary

judgment on Oppenheim's FCCPA claim.

## III. CONCLUSION

For the foregoing reasons, we affirm.

11

**AFFIRMED.**